1  John Gomez, Esq. (SBN# 171485)
   Brian R. Mason, Esq. (SBN #257420)
2  Jessica Lujan, Esq. (SBN: 312394)
3  Lara Deitz, Esq. (SBN #328302)
   **GOMEZ TRIAL ATTORNEYS**
4  755 Front Street
5  San Diego, California 92101
   Tel: (619) 237-3490 / Fax: (619) 237-3496
6  E-Service: *teammason@thegomezfirm.com*
7
8  David K. Demergian, Esq. (SBN #95008)
   DEMERGIAN LAW
9  501 West Broadway, Suite 800
10 San Diego, Ca.  92101
11
   Attorneys for Plaintiff
12 CECILIA BACH

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15 | CECILIA BACH, individually, and as | **Case No.: 3:24-CV-01687-W-BJC** |
16 | Successor in Interest to the ESTATE | |
   | OF KEITH BACH; | **FIRST AMENDED COMPLAINT AND** |
17 | | **DEMAND FOR JURY TRIAL** |
18 |        Plaintiff, | |
19 |        vs. | 1. Deliberate Indifference to Serious |
   | | Medical Needs 42 U.S.C. §1983 |
20 | | 2. Wrongful Death 42 U.S.C. §1983 |
21 | COUNTY OF SAN DIEGO; KELLY | 3. Right of Association 42 U.S.C. |
   | A. MARTINEZ, in her individual | §1983 |
22 | capacity; RICH WILLIAMS, in his | 4. Failure to Properly Train and |
23 | individual capacity; NAPHCARE, | Supervise 42 U.S.C. §1983 |
   | INC.; DR. JON MONTGOMERY, | 5. *Monell* Municipal Liability 42 |
24 | D.O; DOES 1 to 75, in their individual | U.S.C. §1983 |
25 | capacities, and DOES 76-100, | 6. Failure to Summon Medical Care |
   | inclusive, | Cal. Gov Code §845.6 |
26 | | 7. Wrongful Death & Survival Action |
27 |        Defendants. | CCP §§ 377.30, 377.60 *et seq.* |
   | | 8. Negligence |
28 | | 9. Bane Act Cal. Civ. Code §52.1 |

COMES NOW, CECILIA BACH, individually and as Successor-in-interest to the ESTATE OF KEITH BACH, and hereby alleges as follows:

## INTRODUCTION

1.  Plaintiff CECILIA BACH individually, and in her capacities as Successor-in-interest to the ESTATE OF KEITH BACH (hereinafter "Plaintiff"), sues to seek justice and recover damages arising from the wrongful death of her husband, Keith Bach (hereinafter "Keith" or "Decedent"), while he was in the custody and care of San Diego County Central Jail (hereinafter "SDCJ").

## JURISDICTION, VENUE & COMPLIANCE
## WITH TORT CLAIMS ACT

2.  Subject matter jurisdiction is proper in the United States District Court for the Southern District of California pursuant to 28 U.S.C §§1331, 1343(a)(3) and (4), because Plaintiff asserts causes of action for constitutional violations arising under 42 U.S.C §1983.

3.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

4.  On March 22, 2024, Plaintiff served a timely claim against the Defendant COUNTY OF SAN DIEGO pursuant to California Government Code §§910, *et seq*. The COUNTY OF SAN DIEGO never responded to the claim, thereby rejecting the claim pursuant to California Government Code §912.4(a).

5.  Venue is proper in the Southern District of California pursuant to 28 U.S.C. §1391 because the acts or omissions which form the basis of Plaintiff's claims occurred in the County of San Diego, California within the Southern District.

## PARTIES

6.  Now and at all times relevant herein, Plaintiff CECILIA BACH, was an individual residing in the County of San Diego, California. She is Keith's widow, heir, and the beneficiary of the ESTATE OF KEITH BACH.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

3:24-CV-01687-W-BJC

7.     THE ESTATE OF KEITH BACH is represented by and through Plaintiff CECILIA BACH, wife of Decedent Keith Bach, and as such, CECILIA BACH is Decedent's Successor-in-interest pursuant to California Code of Civil Procedure §377.11. Plaintiff, CECILIA BACH, has executed and filed with this First Amended Complaint a Declaration of Successor-in-interest under penalty of perjury pursuant to California Code of Civil Procedure §377.32.

8.     Plaintiff THE ESTATE OF KEITH BACH, by and through its Successor-in-interest, CECILIA BACH seeks survival action damages pursuant to California Code of Civil Procedure §§377.30 and 377.34 which provide that the damages recoverable under the survival action include the loss or damage that the Decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the Decedent would have been entitled to recover had the Decedent lived.

9.     Defendant COUNTY OF SAN DIEGO (hereinafter "COUNTY") is, and was at all times relevant herein, a public entity, duly organized and existing under the laws of the State of California.  Under its authority, the COUNTY operates and manages the SDCJ, and is, and was at all relevant times herein, responsible for the actions and/or inactions and the policies, procedures and practices/customs of the SDCJ, and its respective employees, contractors and/or agents.

10.     Defendant KELLY A. MARTINEZ (hereinafter "MARTINEZ") is, and was at all relevant times herein, the Sheriff of the COUNTY.  As Sheriff, MARTINEZ is the final policymaker for the Sheriff's Department and for the COUNTY on matters relating to the Sheriff's Department, the SDCJ, its deputies, employees, and agents.  MARTINEZ is also responsible for screening, training, retaining, supervising, disciplining, counseling, and controlling of all San Diego County Sheriff's Department custodial employees and/or agents, medical staff, contractors and other DOE Defendants.  At all times relevant herein, she was also responsible for the COUNTY'S compliance with state and federal laws and constitutions.

11.  Defendant RICH WILLIAMS (hereinafter "<u>WILLIAMS</u>") is, and was at all times relevant herein, the Undersheriff for the Sheriff of the County of San Diego prior to and at the time of Decedent's death.  In his capacity as Undersheriff, he assisted in policymaking decisions for the Sheriff's Department, the SDCJ, its deputies, employees, and agents.  He was also responsible for training and supervising COUNTY employees and agents and was responsible for the COUNTY'S compliance with state and federal laws and constitutions.

12.  On information and belief, Defendant DR. JON MONTGOMERY, DO (hereinafter "<u>MONTGOMERY</u>") is and was, at all times relevant herein, the Chief Medical Officer for the Sheriff's Department and was responsible for overseeing the Medical Services Division at the SDCJ at the time of Decedent's death.  At all times relevant herein, he was responsible for and oversaw the development and implementation of quality assurance and utilization review policies and procedures.  At all times relevant herein, all medical doctors and staff at SDCJ worked under MONTGOMERY'S direction. He is sued in his individual capacity for his failure to properly oversee Keith's care and for his failure to supervise other medical staff in caring for Keith.

13.  On information and belief, at all times relevant herein, Defendant NAPHCARE, INC., (hereinafter "<u>NAPHCARE</u>") was a third-party contractor providing medical services to the San Diego County Sheriff's Department.  NAPHCARE'S contract with the COUNTY began in June 2022 and continued through the date of Decedent's death.  NAPHCARE was responsible for providing medical care staffing and one-site medical services to detainees in the SDCJ.  NAPHCARE with the COUNTY was responsible for and oversaw the development and implementation of peer review, quality assurance, utilizations review, and clinical policies and procedures.

14.  Defendant NAPHCARE employed supervised, and/or trained Defendant DOES 1-25 (hereinafter "<u>MEDICAL PROVIDER DOES</u>").

15.  MEDICAL PROVIDER DOES are all County employees, agents, or contractors working within the Sheriff's Department Medical Services Division who were

responsible for Decedent's medical care, booking, follow-up assessments, and referrals for further treatment, whether or not they actually provided Decedent with any medical care.    To the extent that MEDICAL PROVIDER DOES were employees of the COUNTY, they were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.  To the extent MEDICAL PROVIDER DOES were third-party contractors to the COUNTY through their employment with NAPHCARE or any other third-party contractor/agent, they were acting within the course and scope of their employment with said third-party contractor.

16.    Defendant DOES 26-50 (hereinafter "<u>DEPUTY DOES</u>") are all Sheriff's Department deputies who were responsible for summoning medical care, observing any audio or video monitors, responding to call buttons, feeding detainees, and/or conducting wellness checks on the Decedent.  DEPUTY DOES were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

17.    Defendant DOES 51-75 (hereinafter "<u>DEPUTY SUPERVISOR DOES</u>") are Sheriff's Department deputies who were responsible for training and supervising DEPUTY DOES.  DEPUTY SUPERVISOR DOES were acting under color of law and within the scope of their employment at all times relevant to the events described in this Complaint.

18.    Plaintiff is truly ignorant of the true names and capacities of DOES 1-100, inclusive, and/or is truly ignorant of the facts giving rise to their liability and will amend this Complaint once their identities have been ascertained as well as the facts giving rise to their liability.

19.    Plaintiff has complied with California Code of Civil Procedure §364 and provided a notice of intent to sue for medical negligence to NAPHCARE on September 23, 2024.  Plaintiff will amend her Complaint to plead tort claims of medical malpractice against NAPHCARE after the 90-day notice period has expired.

/ / /

# FACTUAL ALLEGATIONS

**A. Circumstances Surrounding Keith Bach's Death in San Diego Central Jail Custody**

20.    Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

21.    Keith Bach died at the age of 63 while in custody at the SDCJ on September 28, 2023.   His death was entirely preventable and was deemed a homicide by the COUNTY'S own Medical Examiner.

22.    Keith was a 20-year veteran of the United States Military and was married to Plaintiff CECILIA BACH at the time of his death.

23.    Keith was also a diabetic and for years prior to his death, he had successfully managed his diabetes with a MiniMed continuous glucose monitor in combination with a MiniMed insulin pump to administer fast-acting insulin.

24.    On September 25, 2023, Keith was arrested by the Chula Vista Police Department and booked in SDCJ located at 1173 Front Street San Diego, CA 92101. No charges were ever filed by the District Attorney's Office related to the arrest.

25.    Based on information and belief, once Keith was booked on September 25, 2023, his custody and care was entrusted solely to the County of San Diego Sheriff's Department.

26.    Due to his medical condition, that same day, Keith was taken by Defendants, and each of them, to Scripps Mercy Hospital Chula Vista for medical clearance prior to being booked into SDCJ.

27.    Based on information and belief, at the time Keith was being booked he had elevated glucose levels, and his insulin pump was beeping, indicating it needed to be refilled.

28.    Scripps Mercy Hospital Chula Vista Doctors noted under "Medical Decision Making" that Keith's insulin pump needed to be refilled.  Based on information and belief,

GOMEZ TRIAL
ATTORNEYS

the document indicating the "Medical Decision Making" was provided to Defendants, and each of them, by the Scripps Mercy Hospital Chula Vista Doctors.

29.    Based on information and belief, during the booking process at the SDCJ, Keith experienced a syncopal episode and was transported by Defendants, and each of them, in an ambulance back to Scripps Mercy Hospital Emergency Department.

30.    Based on information and belief, Keith was admitted to Scripps Mercy Hospital Emergency Department on September 25, 2023, at 10:40 p.m.

31.    Based on information and belief, Keith was discharged from Scripps Mercy Hospital Emergency Department on September 26, 2023, at 2:04 a.m., and again, his custody and care was entrusted solely to the San Diego County Sheriff's Department.

32.    It was well documented in Keith's medical records from Scripps Mercy Hospital, that Keith had type 1 diabetes mellitus and required the use of both a glucose monitor and insulin pump.  Based on information and belief these records were provided to Defendants, and each of them prior to Keith's death.

33.    Based on information and belief, on September 26, 2023, at 4:00 a.m., Keith notified MEDICAL PROVIDER DOE 1, who, based on information and belief, was the nurse practitioner who performed his initial intake assessment at the SDCJ, that his insulin pump would be depleted of insulin in approximately 28 hours.

34.    Later that day at 12:00 p.m., Keith was evaluated by MEDICAL PROVIDER DOE 2, who, based on information and belief, was a second nurse practitioner who placed an order for 10 units of insulin, three times a day.

35.    Between 1:00 p.m. and 10:00 p.m., on September 26, 2023, Keith was cooperative with all Defendants, including all MEDICAL PROVIDER DOES and/or DOES 76-100, and he received 10 units of insulin at 4:43 p.m.

36.    On September 27, 2023, at 1:17 a.m., Keith's blood glucose level was 322 mg/dL.  As a result, Keith requested to receive 20 units of insulin.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

37.    Keith was eventually administered 10 units of insulin at 1:51 a.m. This was Keith's last documented insulin administration for the remainder of his time at SDCJ up until his death on September 28, 2023.

38.    On September 27, 2023, from 2:00 a.m. to 9:00 p.m., Keith was not seen by MEDICAL PROVIDER DOES and/or DOES 76-100. During this time, based on information and belief, Keith asked several DEPUTY DOES, SUPERVISOR DEPUTY DOES, and/or DOES 76-100, on numerous occasions for insulin and his requests went ignored. Based on information and belief, other inmates also attempted to assist Keith in requesting insulin and the inmates pointed out to those same DEPUTY DOES, SUPERVISOR DEPUTY DOES, and/or DOES 76-100, that Keith's insulin pump was beeping and that his pump was empty.

39.    Based on information and belief, during mealtimes on September 27, 2023, Keith gave his food to fellow inmates because he did not want to eat without access to insulin. During mealtimes, both he and his inmates notified DEPUTY DOES, SUPERVISOR DEPUTY DOES, and/or DOES 76-100, that he required insulin.

40.    Based on information and belief, on September 28, 2023, at 03:38 a.m., Keith was discovered unresponsive in his cell. Keith's glucose level was measured, and the meter read "HI" meaning his glucose levels were greater than 500 ml/dL.

41.    During the course of these three days, Keith's wife and Plaintiff CECILIA BACH was receiving notifications that Keith's insulin pump was empty. She frantically visited the jail multiple times trying to deliver insulin to Keith but was told by Defendants, and each of them, that he would be taken care of by the SDCJ medical staff and deputies.

42.    Defendants, and each of them, inhumanely ignored Keith for at least 19 hours and failed to provide him life-saving insulin. Keith died on September 28, 2023, while in the sole care of Defendants, and each of them.

43.    An autopsy was performed on September 29, 2023, but the medical examiner's report was not released until September 18, 2024.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

44.    A vitreous chemistry panel revealed an elevated glucose level of 663 mg/dL and elevated VUN of 53 mg/dL.

45.    The autopsy revealed subnuclear vacuoles in the kidney tubules, which is consistent with diabetic ketoacidosis.

46.    Toxicology testing was negative for alcohol and common drugs of abuse.

47.    The COUNTY'S own Deputy Medical Examiner concluded the following:

> Based on the autopsy findings and the circumstances surrounding the death, as currently understood, the cause of death is diabetic ketoacidosis due to type 1 diabetes mellitus with hypertensive and atherosclerotic cardiovascular disease as a contributing condition. Review of outpatient medical records clearly indicates that Mr. Bach had demonstrable knowledge in managing his diabetes; however, as an inmate, he became reliant on the medical services provided by the jail for continued management of his condition. Following insufficient insulin administration while in custody, Mr. Bach developed diabetic ketoacidosis and died. This occurred despite medical records containing documentation of his medical condition, insulin requirements, when his pump would be depleted of insulin, and multiple unanswered requests for insulin by Mr. Bach and fellow inmates. The death is due to complications of a natural disease. However considering the *inaction* (*i.e.*, neglect) characterizing the events leading to inadequate care while incarcerated of Mr. Bach's health conditions and ultimately, his death, *the manner of death is classified as **homicide**.*

48.    Pursuant to the Medical Examiner's report Keith's "Cause of Death" was Diabetic Ketoacidosis, and the "Manner of Death" was ***Homicide***.

49.    Keith's basic care needs and medical needs were severely neglected by Defendants, and each of them, despite obvious signs that he needed urgent and immediate

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL ATTORNEYS

care.  Said neglect, failure to act, and clear indifference to human life, resulted in Keith's death, which has been classified as a ***homicide***.

**B. San Diego County Has a Long History of Deliberate Indifference to Detainees' and Inmates' Constitutional Rights**

50.      Pursuant to Federal Law, the San Diego County Sheriff's Department has a responsibility to provide adequate medical care for individuals while they are in its custody.

51.      Based on information and belief, between 2006 and 2020, a total of 185 people died in jails run by the San Diego County Sheriff's Department.  In 2021, a record high of 18 deaths in San Diego County Sheriff's jails were reported—a rate higher than any other large county across the state.

52.      In 2023, 13 people died in San Diego County Sheriff's jails.

53.      The number of deaths is a clear representation of the systemic issues within the San Diego County Sheriff's Department.

54.      The California State Auditor completed an audit of the San Diego County Sheriff's Department in February 2022, and its report shed light on the deficiencies. [1]

55.      Based on information and belief, the Auditor found the following deficiencies:

    a.  Insufficient health evaluations at intake

    b.  Inconsistent follow-up care

    c.  Inadequate safety checks

    d.  Unnecessary delays in performing lifesaving measures

    e.  Deficiencies in medical and mental health care system

56.      The audit was conducted to determine the reasons for in-custody deaths of incarcerated individuals within San Diego County Sheriff's jails.

---

[1] Plaintiff incorporates herein by reference the State Auditor's report: https://information.auditor.ca.gov/pdfs/reports/2021-109.pdf

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL ATTORNEYS

3:24-CV-01687-W-BJC

57.     Acting California State Auditor, Michael S. Tilden, CPA, concluded in the audit that the San Diego County Sheriff's Department failed to adequately prevent and respond to the deaths of individuals in its custody.

58.     The audit also noted that every death of an individual should require a thorough review to determine whether changes to its policies and procedures are warranted and the San Diego County Sheriff Department's current review of deaths is insufficient.

59.     The San Diego Citizens' Law Enforcement Review Board (hereinafter "CLERB") reviewed the data representing in-custody deaths in San Diego County Sheriff's jails over the past 10 years, and the results were released in April 2022.

60.     CLERB concluded, in pertinent part:

a. Residents of San Diego County are no more likely to die than residents of other California counties;

b. San Diego jails have the highest number of unexplained deaths compared with all other California counties when controlling for jail population;

c. The risk of overdose/accidental deaths is the greatest in San Diego jails;

d. Elevated risk of death appears to be isolated to the unsentenced jail population.

61.     At the time of Keith's death, the San Diego County Sheriff's jails by and through the COUNTY and NAPHCARE had *de facto* policies or widespread, longstanding deficient policies and practices related to inmates held at the SDCJ, including but not limited to:

a. Failing to properly house individuals to ensure their safety and well being;

b. Leaving individuals unattended in their cells for extended periods despite signs of medical or mental distress;

c. Failing to summon medical or mental health care when obviously necessary;

d. Failing to coordinate, share, or update internal information systems with critical medical or mental health information

GOMEZ TRIAL ATTORNEYS

1           e. Failing to adequately staff the medical services division.

2        62.    Based on information and belief, the COUNTY, NAPHCARE, and the SDCJ
3    have a history of insufficient insulin administration to inmates while in custody.

4        63.    Based on information and belief, and prior to Keith's death and at all times
5    relevant herein, numerous complaints have been made by inmates, family members of
6    inmates, community members, and the COUNTY'S and NAPHCARE'S own staff
7    regarding medical neglect, staff misconduct, injuries in custody, and deaths in custody.

8        64.    Based on information and belief, and prior to Keith's death and at all times
9    relevant herein, the COUNTY and NAPHCARE have repeatedly failed to investigate
10    incidents of deaths in jail, medical neglect, in custody injuries, and staff misconduct,
11    despite the numerous complaints.  The San Diego County Sheriff's Department has
12    further failed to take any meaningful action to review the in-custody deaths and/or prevent
13    future in-custody deaths.

14        65.    The Sheriff's Department's internal entity tasked with reviewing critical
15    incidents is the "Critical Incident Review Board."  The Review Board's responsibility is
16    to improve the health and welfare of incarcerated individuals, yet they have failed to do
17    so.

18              **FIRST CAUSE OF ACTION**

19        **Deliberate Indifference to Serious Medical Needs (42 U.S.C §1983)**

20        ***(By Plaintiff as Successor-in-Interest Against Defendants MARTINEZ, WILLIAMS,***
21    ***MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL***
22    ***PROVIDER DOES, and DOES 76-100)***

23        66.    Plaintiff repeats, realleges, and incorporates by reference, each of the
24    preceding paragraphs as though set forth in full herein.

25        67.    Plaintiff alleges this cause of action as Keith's Successor-in-interest.

26        68.    Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY
27    DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-

28

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

3:24-CV-01687-W-BJC

1   100, and each of them, failed to provide Keith with adequate medical care in violation of
2   his constitutional rights and without due process of law.

3       69.    The Due Process Clause of the Fourteenth Amendment imposes an
4   affirmative duty on the government to provide medical care to individuals in its custody.
5   Plaintiff is informed and believes and thereon alleges that MARTINEZ, WILLIAMS,
6   MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL
7   PROVIDER DOES, and DOES 76-100, and each of them, violated Keith's Fourteenth
8   Amendment right to medical care.

9       70.    Prior to his death and at all relevant times, Keith, was a diabetic dependent
10  on an insulin pump and he had serious medical needs when he was booked and kept at
11  the SDCJ under the care and supervision of Defendants MARTINEZ, WILLIAMS,
12  MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL
13  PROVIDER DOES, and DOES 76-100, and each of them.

14      71.    Prior to his death, and at all times relevant herein, Defendants MARTINEZ,
15  WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES,
16  MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, ignored obvious
17  signs Keith was in medical distress.  They ignored Keith when he was begging for medical
18  attention and for insulin to be administered.  They ignored Keith's beeping insulin pump
19  monitor, indicating insulin levels were low.  They ignored Plaintiff CECILIA BACH who
20  tried to deliver insulin to her husband.

21      72.    Prior to his death, and at all times relevant herein, Defendants MARTINEZ,
22  WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES,
23  MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, were deliberately
24  indifferent to Keith's known and serious medical needs, which caused him harm and
25  death.

26      73.    Keith's medical records, which Defendants MARTINEZ, WILLIAMS,
27  MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL
28  PROVIDER DOES, and DOES 76-100, and each of them, possessed prior to Keith's

death, made Keith's medical condition clear and stressed that he relied on adequate amounts of insulin which were monitored and provided by both a glucose monitor and insulin pump.

74.     Accordingly, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, knew that Keith faced a substantial risk of serious harm if Keith's medical insulin needs went untreated.

75.     By Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, failing to properly treat Keith's serious medical condition, Defendants, and each of them, were deliberately indifferent to Keith's serious medical needs and consciously disregarded the risks created by failing to provide Keith the needed insulin.  Defendants, and each of them, failed to take reasonable steps to treat Keith's medical needs even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved – making the consequences of Defendants' conduct obvious.

76.     Plaintiff alleges Defendants, and each of their, actions and/or inactions constituted various policy violations.

77.     As a direct and proximate consequence of these actions or inactions of Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, Keith died, and his death was ruled a ***homicide*** by the COUNTY'S own Medical Examiner.

78.     As a direct and proximate result of Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of their, deliberate indifference to Keith's serious medical needs, Keith experienced physical pain, severe emotional

distress, and mental anguish, as well as loss of his life, and other compensatory damages alleged herein.

79.     The conduct alleged herein caused Keith to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Keith to suffer emotional distress, pain and suffering, death, and further compensatory damages according to proof at the time of trial.

80.     The conduct alleged herein was done in deliberate or reckless disregard of Keith's constitutionally protected right.  The alleged conduct justifies the award of exemplary/punitive damages against Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, in an amount according to proof at the time of trial to deter Defendants from engaging in similar conduct in the future and/or to make an example of Defendants by way of monetary punishment.

81.     Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

## SECOND CAUSE OF ACTION

### Wrongful Death – Substantive Due Process (42 U.S.C. §1983)

*(By Plaintiff as an Individual Against Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100)*

82.     Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

83.     Plaintiff CECILIA BACH, as an individual, alleges this Fourteenth Amendment substantive due process claim against Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, for depriving her of her right to companionship and society with her beloved husband, Keith Bach.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL ATTORNEYS

84.     While Decedent was in Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of their, care, they committed wrongful acts which proximately caused Keith's death.

85.     Prior to Keith's death, and at all times relevant herein, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, ignored obvious signs Keith was in medical distress.  They ignored Keith when he was begging for medical attention and for insulin to be administered.  They ignored Keith's beeping insulin pump monitor, indicating insulin levels were low.  They ignored Plaintiff CECILIA BACH who tried to deliver insulin to her husband.

86.     Prior to Keith's death, and at all times relevant herein, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, were deliberately indifferent to Keith's known and serious medical needs, which caused him harm and death.

87.     Keith's medical records, which Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, possessed prior to Keith's death, made Keith's medical condition clear and stressed that he relied on adequate amounts of insulin which were monitored and provided by both a glucose monitor and insulin pump.

88.     Accordingly, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, knew that Keith faced a substantial risk of serious harm if Keith's medical insulin needs went untreated.

89.     By Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-

100, and each of them, failing to properly treat Keith's serious medical condition, Defendants, and each of them, were deliberately indifferent to Keith's serious medical needs and consciously disregarded the risks created by failing to provide Keith the needed insulin.  Defendants, and each of them, failed to take reasonable steps to treat Keith's medical needs even though a reasonable officer or employee under the circumstances would have understood the high degree of risk involved – making the consequences of Defendants' conduct obvious.

90.    Plaintiff alleges Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of their, actions and/or inactions constituted various policy violations.

91.    Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of their, deliberate indifference was an actual and proximate cause of Plaintiff CECILIA BACH'S economic and non-economic damages including, but not limited to funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support.  Plaintiff seeks compensatory damages.

92.     Plaintiff also seeks punitive damages on the grounds that Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, acted with deliberate and reckless disregard of Keith's constitutional rights.

93.    Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988.

/ / /

/ / /

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

### THIRD CAUSE OF ACTION

### Right of Association (42 U.S.C. §1983)

### *(By Plaintiff as an Individual Against Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100)*

94.     Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

95.     Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, deprived Keith of his rights under the United States Constitution to be free from denial of medical care and denial of due process.

96.     Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-100, and each of their, acts and/or omissions of deliberate indifference to Keith's serious medical needs, health, and safety, which led to his untimely death, violated Keith's civil rights and deprived Plaintiff CECILIA BACH of her liberty interests in the family relationship in violation of her substantive due process rights afforded to her under the First and Fourteenth Amendment to the United States Constitution.

97.     There was no legitimate penological interest in failing to communicate critical medical information and denying access to medical care to an inmate in severe and obvious medical distress.

98.     Defendants' actions shock the conscience.

99.     The deprivation of the rights alleged above has destroyed the Constitutional rights of Keith's family including his wife, Plaintiff CECILIA BACH.

100.    Plaintiff CECILIA BACH has been deprived of her rights to companionship and society with her husband, Keith.

101.    Defendants MARTINEZ, WILLIAMS, MONTGOMERY, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and DOES 76-

GOMEZ TRIAL
ATTORNEYS

3:24-CV-01687-W-BJC

100, and each of their, deliberate indifference was an actual and proximate cause of Plaintiffs' economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiff seeks compensatory damages.

102. Plaintiff also seeks punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Keith's constitutional rights.

## FOURTH CAUSE OF ACTION

### Failure to Properly Train, Supervise, and Discipline (42 U.S.C. § 1983)

***(By Plaintiff as Successor-in-interest Against Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100)***

103. Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

104. Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, failed to properly train, supervise, and discipline, DEPUTY DOES, SUPERVISOR DEPUTY DOES, MEDICAL PROVIDER DOES, and other subordinates and employees, in the performance of their duties. They failed to properly train, supervise, and discipline their subordinates regarding dealing with inmates in medical distress and regarding the need to communicate critical medical information to each other. They failed to properly train, supervise, and discipline their subordinates regarding the treatment of detainees with diabetes.

105. Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, failed to train, supervise, and discipline medical doctors and nurses on the necessary care of inmates suffering from serious medical conditions. They have also failed to implement policies and procedures with respect to

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

communicating such sensitive and critical information to ensure that inmates are cared for.

106.     Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPCHARE, and DOES 76-100, and each of them, had a non-delegable duty to ensure that all contract employees, agents, and/or subordinates, were properly trained, supervised, and disciplined to meet the needs of those detained under their care.

107.     Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, knew that their subordinates who were entrusted by them to care for detainees at the SDCJ, were consistently failing to conduct their duties, leading to numerous deaths and serious injuries.

108.     Despite specific knowledge that critical medical information was not being communicated from the medical staff to sworn staff, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, took no action.

109.     Further, despite this knowledge, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, failed to train, supervise, and discipline their staff.

110.     Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, have failed to maintain adequate and proper training, supervision, and discipline, necessary to educate deputies, employees, subordinates, and medical staff as to the Constitutional rights of inmates, the need to monitor patients exhibiting symptoms of serious medical conditions, and to prevent consistent and systemic failure to provide medical care.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

111.    Despite numerous and repeated Constitutional violations, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, failed to train, supervise, and discipline doctors, nurses, and other staff on the necessary coordination of care of inmates suffering from serious medical conditions. They have also failed to implement policies and procedures with respect to proper training on these matters.

112.    Despite their knowledge of previous instances of wrongful deaths in SDCJ as a result of their failure to communicate critical medical conditions, Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, continued to fail to properly train, supervise, and discipline their deputies and medical staff to prevent deaths of inmates.

113.    The failure of Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, to promulgate or maintain constitutionally adequate training, supervision, and disciplining, was done with deliberate indifference to the rights of Keith Bach and others in a similarly situated position.

114.    As an actual and proximate result of Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of their, failures to properly train, supervise, and discipline their subordinates, Keith's diabetes and insulin levels were not properly monitored, and his medical condition was not properly treated.

115.    Keith's death was a foreseeable consequence of said failures.

116.    Officials of the San Diego Sheriff's Department, including, but not limited to Defendants MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of them, acting under color of law, have subjected Keith and other persons

GOMEZ TRIAL
ATTORNEYS

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

3:24-CV-01687-W-BJC

similarly situated to a pattern of conduct consisting of continuing, widespread and persistent pattern of unconstitutional misconduct.

117.    As a result, Keith suffered both physically and mentally and eventually died.

118.    The failure of all supervisory defendants to promulgate or maintain constitutionally adequate training was done with deliberate indifference to the rights of Keith Bach and others in his position.

119.    As a direct and proximate consequence of the failure of MARTINEZ, WILLIAMS, MONTGOMERY, MEDICAL PROVIDER DOES, and SUPERVISOR DEPUTY DOES, COUNTY, NAPHCARE, and DOES 76-100, and each of their failure to properly train, supervise, and discipline their subordinates, employees, deputies, and medical staff, Keith suffered unconstitutional treatment and inhumane conditions during his detention and ultimately suffered and died.

## FIFTH CAUSE OF ACTION

*Monell* **Governmental Entity Liability Civil Rights Action (42 U.S.C. §1983)**

*(By Plaintiff as an Individual and Successor-in-interest, Against Defendants COUNTY, NAPHCARE, and DOES 76-100)*

120.    Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

121.    Defendants COUNTY, and DOES 76-100, and each of them, were acting under color of state law because its employees and agents were acting or purporting to act in the performance of their official duties as deputies and employees of the COUNTY.

122.    Defendants NAPHCARE, and DOES 76-100, and each of them, were acting under color of state law because they are private entities that contracted with Defendant COUNTY to perform the state function of providing medical care within the COUNTY'S jails.  Defendant NAPHCARE's employees and agents were acting or purporting to act in the performance of their official duties as contractors with the County.  (See *West v. Atkins* (1988) 487 U.S. 42, 53–54; *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883

GOMEZ TRIAL
ATTORNEYS

3:24-CV-01687-W-BJC

(9th Cir. 1991) (*per curiam*); *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 757 (9th Cir. 2020) (stating a private physician under contract with a state to provide medical services to inmates was a state actor for purposes of section 1983).

123.    Further, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." (*Estelle v. Gamble* (1976) 429 U.S. 97, 103.) Further, the government's obligation to provide adequate medical care is non-delegable, as set forth in the Supreme Court's decision in *West v. Atkins* (1988) 487 U.S. 42. In *West*, the Court determined that '[c]ontracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." (487 U.S. at 56, holding that where the State delegated provision of inmate medical care to a private physician, the physician acted under color of state law, and actions of the physician could be attributed to the State.)

124.    Defendants COUNTY, NAPHCARE, and DOES 76-100, and each of them, are responsible for the unconstitutional conduct of the individual private care providers

125.    Plaintiff alleges Defendants COUNTY, NAPHCARE, and DOES 76-100, and each of them, by and through their employees, agents, and contractors, deprived Keith of his constitutional rights under the due process clause of the Fourteenth Amendment prohibiting deprivation of life without due process of law.

126.    There were widespread, longstanding and systemic deficiencies in Defendants, COUNTY, NAPHCARE, and DOES 76-100, and each of their treatment of inmates. These deficiencies included and are not limited to failure to render medical care, improper cell checks, improper housing assignments, inadequate medical staffing, lack of required training on screening, lack of communication of necessary and critical medical information among staff, and non-compliant policies and procedures.

127.    Defendants COUNTY, NAPHCARE, and DOES 76-100, and each of their, failure to train their deputies, employees, subordinates, medical staff, including but not limited to DEPUTY DOES, SUPERVISOR DEPUTY DOES, and MEDICAL

1  PROVIDER DOES, on treatment of inmates in medical distress gives inference of a
2  custom that authorized or condoned deputy misconduct.

3       128.    Defendants were deliberately indifferent to the right of Keith to be free from,
4  and protected from, harm by the misconduct of its deputies, employees, subordinates,
5  medical staff, including but not limited to DEPUTY DOES, SUPERVISOR DEPUTY
6  DOES, and MEDICAL PROVIDER DOES.

7       129.    The Sheriff's Department's longstanding practice or custom was
8  unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm
9  to inmates.

10      130.    Defendants COUNTY, NAPHCARE, and DOES 76-100, and each of them,
11 knew their failure to adequately train their staff made it highly predictable and foreseeable
12 that its employees and agents would engage in conduct that would deprive detainees of
13 constitutionally protected rights and result in additional deaths.

14      131.    Defendants COUNTY, and DOES 76-100, and each of them, also acted
15 through and is liable by virtue of its final policymakers, such as WILLIAMS and
16 MARTINEZ, and/or their subordinates who had been delegated final policymaking
17 authority.  Defendants COUNTY, and DOES 76-100, and each of their final
18 policymakers, including WILLIAMS and MARTINEZ, and/or their subordinates were
19 acting under color of state law.  Their final policymaking authority concerned all
20 constitutional violations described in this Complaint.

21      132.    Defendants NAPHCARE and DOES 76-100, and each of them, also acted
22 through and is liable by virtue of its final policymakers and/or their subordinates who had
23 been delegated final policymaking authority.  Defendants NAPHCARE and DOES 76-
24 100, and each of their, final policymakers and/or their subordinates were acting under
25 color of state law.  Their final policymaking authority concerned all constitutional
26 violations described in this Complaint.

27      133.    Defendants COUNTY, and DOES 76-100, and each of them, is also liable
28 based on WILLIAM'S and MARTINEZ'S failure to enact new and different policies

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

despite their knowledge of woefully inadequate care of past detainees, and a high rate of in-custody deaths at the SDCJ.

134.   Defendants NAPHCARE and DOES 76-100, and each of them, are also liable based on their policymakers' and their policymakers' subordinates' failure to enact new and different policies despite their knowledge of woefully inadequate care of past detainees, and a high rate of in custody deaths at the SDCJ.

135.   Defendants COUNTY, and DOES 76-100, and each of them, is also liable based on their ratification and approval of the constitutional, statutory, and other law violations as alleged in this Complaint.

136.   Defendants NAPHCARE, and DOES 76-100, and each of them, are also liable based on their ratification and approval of the constitutional, statutory, and other law violations as alleged in this Complaint.

137.   Defendants COUNTY'S, NAPHCARE'S, and DOES 76-100, and each of their policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees, caused Keith's deprivation of rights by the individual defendants.  That is, Defendants', and each of their, policies, customs, or practices, actions and failures to act by final policymakers, ratification of constitutional and law violations, and failure to train its employees were so closely related to Keith's deprivation of rights that they were the moving force causing Keith's injury and death.

138.   Defendants COUNTY'S, NAPHCARE'S and DOES 76-100, and each of their, actions and omissions actually and proximately caused Plaintiff's economic and non-economic damages including funeral expenses, loss of love, companionship, society, comfort, care, assistance, protection, and moral support.  Plaintiff seeks compensatory damages.

139.   Defendants COUNTY, NAPHCARE, and DOES 76-100, and each of them, by and through their employees and agents, deprived Plaintiff CECILIA BACH of her rights to companionship and society with her husband, Keith, in violation of the

Fourteenth Amendment. Their actions and failures to act actually and proximately caused Plaintiff's economic and non-economic damages including loss of love, companionship, society, comfort, care, assistance, protection, and moral support. Plaintiff seeks compensatory damages.

140.    Plaintiff also seeks punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Keith's constitutional rights.

141.    Plaintiff is entitled to costs and reasonable attorney's fees pursuant to 42 U.S.C. §1988.

### SIXTH CAUSE OF ACTION

**Failure to Summon Medical Care Cal. Gov. Code §845.6**

***(By Plaintiff as Successor-in-interest Against All Defendants and Does 1-100)***

142.    Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

143.    Plaintiff asserts this claim as successor-in-interest to the ESTATE OF KEITH BACH, pursuant to California Code of Civil Procedure §377.30.

144.    Defendant County is liable because while acting within the scope of employment, Defendants WILLIAMS, MONTGOMERY, MARTINEZ, MEDICAL PROVIDER DOES, DEPUTY DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100:

    a.    Knew or had reason to know that Keith required medical care;

    b.    Knew or had reason to know that Keith's need for medical care was immediate; and

    c.    Failed to take reasonable action to summon medical care.

145.    Defendants WILLIAMS, MONTGOMERY, MARTINEZ, MEDICAL PROVIDER DOES, DEPUTY DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, knew or had reason to know that Keith required medical care for a multitude of reasons, including but not limited to: his well-documented chronic medical

history, his repeated requests for medical treatment, and his signs and symptoms of illness along with his beeping insulin monitor.  They knew or should have known of Keith's need for medical care was immediate because of all of the circumstances and symptoms described above.  They failed to take reasonable action to summon medical care, ignoring his pleas for medical care and to be taken to the hospital.

146.    Pursuant to California Government Code §§845.6 and 815.2, Defendant COUNTY is liable because Defendants WILLIAM, MONTGOMERY, MARTINEZ, DEPUTY DOES, MEDICAL PROVIDER DOES, DEPUTY SUPERVISOR DOES, and DOES 76-100, and each of them, were at all times acting within the scope of their employment

147.    Defendant MARTINEZ, WILLIAMS, and MONTGOMERY are liable for DEPUTY DOES, MEDICAL PROVIDER DOES, DEPUTY SUPERVISOR DOES, and DOES 76-100, and each of their, failure to summon medical care and due to their negligent supervision and training of employees regarding when to summon medical care.

148.    Defendant NAPHCARE is vicariously liable for the conduct of their employees, agents, and contractors who were acting within the scope of their employment and failed to summon medical care.

149.    Defendant COUNTY is liable for their employee's breach of duty to summon medical care while acting within the course and scope of their employment.

150.    Defendants', and each of their, conduct was an actual and proximate cause of Keith's pain, suffering, and death, which were a direct and foreseeable result of Defendants' conduct.

151.    Plaintiff CECILIA BACH seeks compensatory damages for Keith's pain and suffering prior to his death, see California Code of Civil Procedure §377.34(b), as well as damages for his death.

/ / /

/ / /

/ / /

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

## SEVENTH CAUSE OF ACTION

### Wrongful Death & Survival Action CCP §§ 377.30, 377.60 *et seq.*

### *(By Plaintiff Individually and as Successor-in-interest Against All Defendants and Does 1-100)*

152.     Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

153.     Plaintiffs allege all California state law claims as basis for state law wrongful death cause of action and incorporate later torts by reference.

154.     Plaintiff, as Keith's wife, has standing to assert a claim for wrongful death pursuant to CCP §377.60.

155.     California Government Code §845.6 creates an affirmative duty for jail officials to "furnish or obtain medical care for a prisoner in his custody." Keith required prompt medical attention from Defendants. Defendants had actual or constructive knowledge of Keith's need for prompt medical attention and deliberately chose not to furnish care. Defendants failed to discharge the duty imposed upon them by the California Government Code.

156.     As alleged above, Defendants violated Gov. Code §845.6, which constitutes "wrongful acts" within the meaning of §377.60.

157.     As alleged above, Defendants violated 42 U.S.C. §1983 by showing a deliberate indifference to Keith's medical needs.

158.     Defendants' decision to deviate from the County' own protocol as to medical care of inmates was a substantial factor in causing Keith's death. It was reasonably foreseeable that failure to properly treat Keith, when he was calling out for help, his insulin pump was beeping, and it was well documented that he was diabetic caused his death.

159.     Defendants' conduct was a direct and proximate cause of Keith's pain, suffering, and death, which was a direct and foreseeable result of Defendants' conduct.

160. Defendant COUNTY, and DOES 1-100, and each of them, is liable for the conduct of the individual defendants who were acting within the scope of their employment with the County. (See Cal. Gov. Code §§ 815.2, 845.6.)

161. Defendants NAPHCARE and DOES 1-100, and each of them, are vicariously liable for the conduct of their employees, agents, and contractors who were acting within the course and scope of their employment.

162. Plaintiff seeks economic and non-economic damages in an amount to be proven at trial, including compensatory damages which include, but are not limited to, any coroner's fees and funeral expenses, emotional distress, loss of love, companionship, comfort, care assistance, protection, affection, society, and moral support.

## NINTH CAUSE OF ACTION

### Negligence

### *(By Plaintiff as Successor-in-interest Against All Defendants and Does 1-100)*

163. Plaintiff repeats, realleges, and incorporates, by reference, each of the preceding paragraphs as though set forth in full herein.

164. Plaintiff asserts this claim as successor-in-interest to the ESTATE OF KEITH BACH, pursuant to California Code of Civil Procedure §377.30.

165. All Defendants, including DOES 1-100, had a duty to Keith Bach to act with ordinary care and prudence.

166. Based on information and belief, DEPUTY DOES, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, improperly, negligently, wrongfully, and recklessly failed to document or communicate Keith's serious medical condition. They so negligently and carelessly examined, diagnosed, treated, failed to treat, and manage Keith's care so as to allow and cause the damages as alleged above. The negligence and carelessness of DEPUTY DOES, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, consist of their failure to use that degree of skill and care ordinarily

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

used by healthcare professionals engaged in the practice of their profession in the same or similar locality and under the same or similar circumstances.

167. DEPUTY DOES, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, improperly, negligently, wrongfully, and recklessly failed to take any action to monitor Keith despite his obvious symptoms of being in serious medical distress and his cries for help.

168. DEPUTY DOES, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, improperly, negligently, wrongfully, and recklessly delayed and failed to summon medical care to Keith who was in obvious physical distress and in acute need of urgent medical care.

169. Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, improperly, negligently, wrongfully, and recklessly failed to set forth policies regarding proper screening, evaluation, treatment, and transportation of inmates suffering from a serious medical condition to a hospital.

170. Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, improperly, negligently, wrongfully, and recklessly failed to ensure that all patients with diabetes receive a treatment plan, appropriate evaluation by a physician, and continuity of care.

171. Further, Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, had a duty to use reasonable care in the training and supervision of its employees, deputies, sworn staff, contractors, and agents.

172. They had a duty to properly train and supervise their employees to use reasonable care in evaluating the health of and risks to detainees and determining the proper and adequate course of treatment for detainees in need of medical treatment.

173. Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, had a duty to properly train and

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

supervise their employees to summon medical care for detainees whom they knew, or had reason to know, required medical care.

174.    Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, failed to train their employees, contractors, and agents to properly evaluate the health of and risks to detainees at intake and while in custody, to identify serious symptoms of medical distress, to determine proper and adequate courses of treatment for detainees in need of medical treatment, and how to summon and provide adequate medical care when necessary.

175.    Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, knew their failure to adequately train their staff made it highly predictable and foreseeable that its employees and agents would engage in conduct that would cause detainees harm and result in additional deaths.

176.    Defendants COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, knew of the COUNTY'S disparately high rates of in-custody deaths, systemic failures, and the fact that the individual deputies and medical providers who they failed to properly train would come into contact with detainees.

177.    Defendants breached their duty of care such that Keith's prolonged health crisis was deliberately ignored.

178.    The inadequacy of Defendants' training actually caused Keith's pain, suffering, and death. Had COUNTY, NAPHCARE, MARTINEZ, WILLIAMS, MONTGOMERY and DOES 76-100, and each of them, trained their employees, agents, and contractors properly, staff would have responded properly to Keith's need for medical care, furnished and/or summoned requisite care, and Keith would not have suffered prolonged pain and would still be alive today.

179.    All Defendants violated Keith's constitutional rights pursuant to the Fourteenth Amendment as alleged above.

180.    The COUNTY and NAPHCARE, and DOES 76-100, are vicariously liable for the conduct of all other Defendants.

181.    Based on the acts alleged herein, Defendants, and each of them, failed to act with ordinary care and breached their duty of care owed to Keith.

182.    As a direct and proximate result of the Defendants', and each of their, negligence, as herein described, Keith suffered physically and mentally in the amount to be determined at the time of trial.

183.    As a further proximate result of Defendants', and each of their, negligence, Keith died.

184.    As a proximate result of Defendants', and each of their, negligence, Plaintiff CECILIA BACH, lost her husband and suffered great emotional and mental harm in the amount to be determined at the time of trial.

185.    Plaintiff, Keith's successors-in-interest, seek compensatory damages including for Keith's pain and suffering prior to his death pursuant to California Code of Civil Procedure §377.34(b)

186.    Defendants' conduct also arises to oppression, fraud, or malice within the meaning of California Cod of Civil Procedure §3294 *et seq*., and punitive damages should be assessed against each Defendant for the purpose of punishment and to make an example.

## **TENTH CAUSE OF ACTION**

### **Violation of Cal. Civ. Code §52.1 (Bane Act)**

### ***(By Plaintiff as Successor-in-interest Against all Defendants, and Does 1-100)***

187.    Plaintiff repeats, realleges, and incorporates by reference, each of the preceding paragraphs as though set forth in full herein.

188.    Plaintiff brings the claims in this cause of action as a survival claim pursuant to California Code of Civil Procedure §377.20 and Plaintiff CECILIA BACH asserts this claim as successor-in-interest pursuant to California Code of Civil Procedure §377.30.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

189.    As alleged above, Defendants and each of them, acted, or failed to act, with deliberate indifference to the substantial risk to Keith's health and safety while he was in their custody and care. Defendants' due process violations are sufficient in and of themselves to constitute a violation of the Bane Act.

190.    As alleged above, Defendants, and each of them, knowingly deprived Keith of constitutionally protected rights through inherently coercive and threatening acts and omissions when based on information and belied, they failed to summon medical care, failed to provide Keith with adequate medical care, and failed to conduct adequate and timely safety checks.

191.    Defendants' deliberate indifference was an actual and proximate cause of Keith's pain, suffering, and death, which were a direct and foreseeable result of Defendants' actions and/or inactions.

192.    Pursuant to California Government Code §815.2, the COUNTY is vicariously liable for the actions and/or omissions of its employees and agents, including but not limited WILLIAMS, MARTINEZ, MONTGOMERY, DEPUTY DOES, MEDICAL PROVIDER DOES, SUPERVISOR DEPUTY DOES, and DOES 76-100, and each of them, because they were acting within the scope of their employment.

193.    Defendant NAPHCARE is vicariously responsible for the conduct of their employees, agents, and contractors, including but not limited to MEDICAL PROVIDER DOES, and DOES 76-100, and each of them, because they were acting within the scope of their employment.

194.    Plaintiff seeks compensatory damages for the pain and suffering Keith was subjected to prior to his death.

195.    Plaintiff also seeks all statutory remedies available pursuant to California Code of Civil Procedure §§52 and 52.1, including civil penalties, treble damages, cost, and attorneys' fees.

196.    Plaintiff also seeks punitive damages on the grounds that Defendants acted with deliberate and reckless disregard of Keith's life, health, and safety.

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

GOMEZ TRIAL
ATTORNEYS

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants, as follows:

1.    For general and special damages according to proof at the time of trial;

2.    For punitive and exemplary damages against all individual defendants;

3.    Civil penalties as provided by law;

4.    Attorneys' fees pursuant to Cal. Civil Code §52.1(b), and Cal. Civil Code §52;

5.    Damages, cost, interest, and reasonable attorneys' fees pursuant to 42 U.S.C. §§1983 and 1988;

6.    All other damages, penalties, costs, and fees as allowed by Cal. Civ. Proc. §§377.20, 377.60, and 1021.5;

7.    Costs;

8.    And for any other relief this Court deems just and proper.

DATED: December 6, 2024                 **GOMEZ TRIAL ATTORNEYS**

BRIAN R. MASON, ESQ.
JESSICA LUJAN, ESQ.
LARA DEITZ, ESQ.
Attorneys for Plaintiff

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution, Plaintiff hereby demands a trial by jury in this matter.

DATED: December 6, 2024                 **GOMEZ TRIAL ATTORNEYS**

BRIAN R. MASON, ESQ.
JESSICA LUJAN, ESQ.
LARA DEITZ, ESQ.
Attorneys for Plaintiff

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

3:24-CV-01687-W-BJC