1  John Gomez, Esq. (SBN# 171485)
2  Brian R. Mason, Esq. (SBN #257420)
   N. Jessica Lujan, Esq. (SBN: 312394)
3  Lara Deitz, Esq. (SBN #328302)
4  **GOMEZ TRIAL ATTORNEYS**
   755 Front Street
5  San Diego, California 92101
6  Tel: (619) 237-3490 / Fax: (619) 237-3496
   E-Service: *teammason@thegomezfirm.com*
7
8  David K. Demergian, Esq. (SBN #95008)
   DEMERGIAN LAW
9  501 West Broadway, Suite 800
10 San Diego, Ca. 92101

11 Attorneys for Plaintiff,
12 CECILIA BACH

13          **UNITED STATES DISTRICT COURT**
14         **SOUTHERN DISTRICT OF CALIFORNIA**
15

| | |
|---|---|
| 16 CECILIA BACH, individually and as Successor in Interest to the ESTATE OF KEITH BACH; | **Case No.: 3:24-cv-01687-W-BJC** |
| 17 | |
| 18 | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' COUNTY OF SAN DIEGO, SHERIFF MARTINEZ, UNDERSHERIFF WILLIAMS, AND DR. MONTGOMERY'S AMENDED MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 19    Plaintiff, | |
| 20    vs. | |
| 21 | |
| 22 COUNTY OF SAN DIEGO, CITY OF CHULA VISTA, KELLY A. MARTINEZ, in her individual capacity, RICH WILLIAMS, in his individual capacity; NAPHCARE, INC.; DR. JON MONTGOMERY, D.O; and DOES 1 to 100, inclusive, | |
| 23 | |
| 24 | Assigned to: Hon. Thomas J. Whelan |
| 25 | Courtroom: 3C |
| 26 | [*Magistrate Benjamine J. Cheeks*] |
| 27    Defendants. | **Hearing Date: January 27, 2025** |
| 28 | **[NO ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1(d)(1)]** |

i

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................... 1

II.  STATEMENT OF FACTS ......................................................................... 3

III. STANDARD OF REVIEW ........................................................................ 8

IV.  ARGUMENT............................................................................................. 9

A. The Allegations of Deliberate Indifference in Plaintiff's Complaint are Overwhelming…………………………………………………………… 9

B. Plaintiff Sufficiently Pled Her Cause of Action for Wrongful Death Against the County and its Supervisory Officials for their tortious violations of Government Code section 845.6, the Bane Act, in addition to violations of Substantive Due Process under the Fourteenth Amendment…………………………………11

   a) *Defendants' violation of Cal. Gov. Code § 845.6*…………………….11
   b) *Defendants' Violation of the Bane Act*…………………………………12

C. Section 844.6 Immunity Does Not Apply to Plaintiff's *Monell* Failure to Train and Supervise Claims……………………………………………………13

D. Plaintiff Needs to Discover the True Identities of the Deputies Employed by the County Who Failed to Provide Insulin to Mr. Bach………………………14

E. Plaintiff Sufficiently Pled Her 42 U.S.C. § 1983 Monell Claims for- Wrongful Death, Deliberate Indifference to Serious Medical Needs, and Right of Association Against Defendant the County and its Supervising Officers and Employees (Medical Provider Doe(s))………………………………………15

   1. Monell Municipal Liability Against the County…………………………16
      a. *The County's deliberate, unconstitutional policies and customs*…………16
      b. *The County's failure to train and supervise its employees*………………19
   2. Officials and Employees Acting Under Color of State Law……………...20
   3. The County's and its employees' indifference to serious medical needs in Violation of Mr. Bach's Substantive Due Process Rights…………………21
   4. The County's and its employees' violation of Plaintiff's and Mr. Bach's First Amendment Association Rights…………………………………………..23

V.   LEAVE TO AMEND................................................................................23

VI.  CONCLUSION……………………………………………………………23

ii

GOMEZ TRIAL
ATTORNEYS

# TABLE OF AUTHORITIES

## Cases

*AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012)……………9

*al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009)…………………………………9

*Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006)……………………………..20

*Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)………………16

*Austin B. v. Escondido Union Sch. Dist.*, 149 Cal.App.4th 860, 883 (2007……………12

*Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990)…………………8

*Barrett v. Superior Court*, 222 Cal.App.3d 1176, 1184 (1990)………………………...11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………………..8

*Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021)…………..19

*Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007))…………………19

*Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal. App.4th 1051, 1071……………………………………………………………………………..11

*Castro v. City of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)……………9,17,22

*City of Canton Ohio v. Harris*, 489 U.S. 378, 388–91 (1989)……………………10,16

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)……………………………17

*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005………………………………………………………………12

GOMEZ TRIAL ATTORNEYS

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

*Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)……………………………………..…16

*Connick v. Thompson*, 563 U.S. 51, 62 (2011)……………………………………..…19

*Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991)……………………………...15

*Daniels v. Williams,* 474 U.S. 327, 329–30 (1986)…………………………………….15

*DeSoto*, 957 F.2d at 658; Schreiber, 806 F.2d at 1401…………………………………23

*Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)……………………...17

*Eminence Cap., LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003)………….…9

*Estelle v. Gamble*, 429 U.S. 97, 102 (1976)…………………………………………….21

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994)…………………………………………22

*Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021)………………………….17

*Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016)……………………………22

*Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985)………………………...15,20

*Henry v. Cnty. of Shasta*, 137 F.3d 1372, 1372 (9th Cir. 1998)……………………….10

*Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)……………………………21,22

*Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020)……17

*Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014)…………………………………16

*Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969)……………………………………….9

*Jett v. Penner*, 439 F.3d 1091, 1098–99 (9th Cir. 2006)………………………………12

iv

GOMEZ TRIAL
ATTORNEYS

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993)……………………………………………………17

*Lattimore v. Dickey*, 239Cal.App.4th 959, 968 (2015)………………………………..11

*Lee v. City of L.A.,* 250 F.3d 668, 682 (9th Cir. 2001)…………………………………9

*Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988)……………………………….15,20

*Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020)…………………..16

*Lopez v. Dep't of Health Servs.,* 939 F.2d 881, 883 (9th Cir. 1991)…………………..21

*McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986)………………………………17

*Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016)………………22

*Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978)……………………………………………………13,14,15,16,17,18

*Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003)……………………………………23

*Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir.)………......20

*Pearson v. Callahan,* 555 U.S. 223, 231 (2009)……………………………..……13

*Preschooler II v. Clark Cnty. Sch. Bd. of Trs.,* 479 F.3d 1175 (9th Cir. 2007)……..10,16

*Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991)……………..10

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040-41 (9th Cir. 2018)……………....14

*Sandoval v. Cnty. Of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021)………….............21

v

1

*Schreiber*, 806 F.2d at 1401……………………………………………………………….23

2

3

*Shorter v. Baca,* 895 F.3d 1176, 1182 n.4 (9th Cir. 2018)……………………………..22

4

*Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012)………………………………..21

5

6

*Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011)…………………………..9,10,17

7

*Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841-843 (2004)……………….12,13

8

9

*West v. Atkins*, 487 U.S. 42, 53–54 (1988)……………………………………………….21

10

11

*Winarto v. Toshiba America Electronics Components, Inc.,*
274 F.3d 1276, 1289-90 (9th Cir. 2001)…………………………………………………13

12

13

**<u>Statutes</u>**

14

Federal Rule of Civil Procedure 12(b)(6)…………………………………………1,8,9,16

15

Federal Rule of Civil Procedure 8(a)(2)……………………………………….…………..8

16

42 U.S.C. § 1983……………………………………………….2,9,14,15,16,17,21

17

Cal. Gov Code § 845.6………………………………………………………1,2,11,12,14

18

Cal. Code Civ. Proc., § 377.60……………………………………………………………11

19

Cal. Code Civ. Proc., § 377.61……………………………………………………………11

20

Cal. Gov. Code, § 815(a).)………………………………………………………………11

21

22

Cal. Civil Code § 52.1(a) & (b). ………………………………......1,3,12,13,14

23

Cal. Gov. Code, § 815.2 (a)………………………………………………....11,13

24

Cal. Gov Code § 844.6……………………………………………………………13,14

25

Cal. Gov. Code, § 820…………………………………………………………………12,14

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    <u>INTRODUCTION</u>

Before the Court is Defendants' County of San Diego, Sheriff Martinez, Undersheriff Williams, and Dr. Montgomery's ("<u>Defendants</u>") Amended Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion should be denied given Plaintiff's well-pled claims arising from the September 28, 2023, in-custody death of her husband, Decedent Keith Bach, which the County's own medical examiner ruled a medical neglect homicide.

On September 20, 2024, Plaintiff Cecilia Bach individually and as successor-in-interest to Decedent, Keith Bach's estate, filed a 42 U.S.C. § 1983 civil rights complaint along with state law claims against Defendants County of San Diego, City of Chula Vista, Kelly A. Martinez, Rich Williams, NaphCare, Inc., and Dr. Jon Montgomery, D.O.[1] (Dkt. No. 1.) Plaintiff alleges: 1) *Monell*[2] claims – for unconstitutional policies and customs, and failure to train and supervise its employees; 2) under 42 U.S.C. § 1983 – wrongful death for deliberate indifference to serious medical needs and right of association; 3) violation of California Government Code section 845.6; 4) violation of the Bane Act, California Civil Code section 52.1; 5) negligence; and a 6) wrongful death and survival action. (Dkt. No. 9, FAC.) On December 6, 2024, Plaintiff filed her First Amended Complaint. (Dkt. No. 9, FAC.) Defendants filed their motion on December 20, 2025, and an Amended 3-page motion on January 2, 2025.[3] (Dkt. Nos. 11, 12.)

For the following reasons, Defendants' motion is without merit:

1)    Plaintiff sufficiently pled that the Sheriff, Undersheriff, and the County's Chief Medical Officer were aware and notified of (but deliberately chose to turn a blind eye to) longstanding, systemic deficiencies in the SDCJ's policies related to medical care of inmates- dating back to at least 2013. Plaintiff even cited to the specific sources of the

---

[1] Defendant CITY OF CHULA VISTA was dismissed on October 17, 2024.  (Dkt. No. 6.)
[2] *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978).
[3] On December 20, 2024, Defendant NaphCare, Inc., also filed a Rule 12(b)(6) motion to dismiss Plaintiff's First Amended Complaint.  (Dkt. No. 10, Motion.)

1

reports- *i.e.*, the California State Auditor and the San Diego Citizens' Law Enforcement Review Board. Plaintiff also alleged numerous specific deficient policies related to housing and medical information processing of inmate medical records at the SDCJ;

2)      Plaintiff pled a wrongful death cause of action against Defendants for their tortious violations of Government Code section 845.6, and the Bane Act, <u>in addition to</u> violations of Substantive Due Process under the Fourteenth Amendment for deliberate indifference to serious medical needs.

3)      Plaintiff alleges the County and NaphCare, Inc.'s unconstitutional policies and customs demonstrating deliberate indifference to the systemic deficiencies in the SDCJ's procedures related to medical care of inmates- specifically in the administration of insulin, as well their failure to train and supervise their employees even after numerous complaints, led to serious and rampant violations of SDCJ inmates' rights for many years, and to Mr. Bach's untimely death. Courts permit *Monell* claims to proceed against municipalities under section 1983 failure to adequately train theories.

4)      Plaintiff has not had the opportunity to discover the true identities of DOES 1-100, were directly involved in the events and circumstances leading to Mr. Bach's death. Plaintiff did plead the Sheriff Department deputies charged with Mr. Bach's care during lunch, at booking, as well as other County's deputies who met Ms. Bach at the front desk, while acting under color of state law, deliberately ignored Mr. Bach's needs for insulin and killed him. Dismissing the Does would be prejudicial to Plaintiff as she has attempted to name them as specifically as possible- *i.e.*, Medical Provider Does vs. Deputy Does and Deputy Supervisor Does. Moreover, there is no prejudice to Defendants as this is not a diversity jurisdiction suit;

5)      Plaintiff sufficiently alleged *Monell* claims based on Defendants' deficient and unconstitutional policies and customs demonstrating deliberate indifference to the systemic deficiencies in the SDCJ's procedures related to medical care of inmates- specifically in the administration of insulin, as well Defendants' failure to train and

2

supervise their employees regarding proper medical record keeping and dissemination of inmate medical information.

6)    By its terms, Section 52.1 does not require a showing of violence or threat of violence- even an attempted interference is enough to give rise to a Bane Act claim. A reasonable person in Decedent's shoes, after being coerced by the County's deputies and agents, into not eating for example, because of Defendants' deliberate refusal to administer insulin, is rightfully entitled to a claim under the Bane Act.

## II.    STATEMENT OF FACTS

Decedent Keith Bach was and had been married to Plaintiff Cecilia Bach for decades at the time of his death. (See First Amended Complaint ("FAC"), ¶ 22.) He died at the age of 63 while in custody at the San Diego County Central Jail (hereinafter "SDCJ") SDCJ on September 28, 2023, under the exclusive care of Defendants. (*Id*. at ¶ 21.) Keith's death was entirely preventable and was deemed a homicide by the County's own Medical Examiner. (*Id*.)

Defendant County of San Diego operates and manages the SDCJ. (*Id*. at ¶ 9.) Defendant Sheriff Kelly A. Martinez and Defendant Undersheriff Rich Williams were at the time of Mr. Bach's death, the final policymakers for the Sheriff's Department and for the County on matters relating to the SDCJ, its deputies, employees, and agents. (*Id*. at ¶ 10-11.) Defendant Jon Montgomery, DO, as Chief Medical Officer for the Sheriff's Department was also a final policymaker and was responsible for and oversaw all medical doctors and medical staff at the SDCJ at the time of Mr. Bach's death and was ultimately in charge of the procedures related to inmates' medical care. (*Id*. at ¶ 12.)

Defendant NaphCare, Inc. is a third-party contractor providing medical services to the San Diego County Sheriff's Department at least since June of 2022. (*Id*. at ¶ 13.) At the time of Mr. Bach's death, NaphCare, Inc., and its medical staff were responsible for providing on-site medical services to County detainees in the SDCJ, including Mr. Bach, therefore exercising the authority given to them by the County. (*Ibid*.)

Case No.: 3:24-cv-01687-W-BJC

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

Mr. Bach was a diabetic and for years prior to his death, he had successfully managed his diabetes with a MiniMed continuous glucose monitor in combination with a MiniMed insulin pump to administer fast-acting insulin. (*Id*. at ¶ 23.) On September 25, 2023, Mr. Bach was arrested by the Chula Vista Police Department and booked into the SDCJ.[4] (*Id*. at ¶ 24.) At the time he was booked, his custody and care were entrusted solely to the County of San Diego Sheriff's Department, its staff and its agents, including NaphCare, Inc. (*Id*. at ¶ 25.) At the time Keith was being booked he had elevated glucose levels, and his insulin pump was beeping, indicating it needed to be refilled. (*Id*. at ¶ 27.)

The following were instances of Defendant NaphCare, Inc.'s and its employees' deliberate indifference to Mr. Bach's serious medical needs for proper insulin administration while at the SDCJ- all of which were pled in Plaintiff's FAC:

a. During the booking process at the SDCJ on September 25, 2023, Mr. Bach experienced a syncopal episode and was transported by Defendants in an ambulance to Scripps Mercy Hospital Chula Vista. (*Id*. at ¶ 29.) Mr. Bach was taken to and discharged from Scripps Mercy Hospital twice between September 25 and September 26, 2023. (*Id*. at ¶ 30-31.) Both times, Defendants the County and NaphCare, Inc., were provided Mr. Bach's medical records which indicated under "Medical Decision Making" that Mr. Bach's insulin pump needed to be refilled. (*Id*. at ¶ 28, 32.) It was well documented in the medical records provided to Defendants the County and NaphCare, Inc., that Mr. Bach had type 1 diabetes mellitus and required the use of both a glucose monitor and insulin pump. (*Id*. at ¶ 32.)

b. On September 26, 2023, at 4:00 a.m., Mr. Bach notified Medical Provider Doe 1, the nurse practitioner who performed his initial intake assessment at the SDCJ, and who was employed by NaphCare, Inc., and was exercising the authority given to

---

[4] The District Attorney's Office never filed charged related to Mr. Bach's arrest. *Id*. ¶ 24.

GOMEZ TRIAL ATTORNEYS

Case No.: 3:24-cv-01687-W-BJC

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

him/her by the County, that his insulin pump would be depleted of insulin in approximately 28 hours. (*Id.* at ¶ 33.)

c. On September 26, 2023, at 12:00 p.m., Mr. Bach was evaluated by Medical Provider Doe 2, a second nurse practitioner, who placed an order for 10 units of insulin, three times a day. (*Id.* at ¶ 34.) This second nurse practitioner was also employed by NaphCare, Inc., and was exercising the authority given to him/her by the County. (*Id.* at ¶ 15, 34.) However, between 1:00 p.m. and 10:00 p.m., on September 26, 2023, Mr. Bach was only provided 10 units of insulin at 4:43 p.m. (*Id.* at ¶ 35.)

d. As a result, on September 27, 2023, at 1:17 a.m., Mr. Bach's blood glucose level was 322 mg/dL, and he repeatedly requested to receive 20 units of insulin. (*Id.* at ¶ 36.) However, Mr. Bach was only administered 10 units of insulin at 1:51 a.m., and this was his last documented insulin administration for the remainder of his time at SDCJ until his death on September 28, 2023. (*Id.* at ¶ 37.)

e. On September 27, 2023, other inmates around Mr. Bach also attempted to assist him in requesting insulin and the inmates pointed out to those same County and NaphCare, Inc., employees that Mr. Bach's insulin pump was beeping and that his pump was empty – however, he was not administered more insulin. (*Id.* at ¶ 38.)

f. In fact, during mealtimes on September 27, 2023, Mr. Bach gave his food to fellow inmates because he did not want to eat without access to insulin. (*Id.* at ¶ 39.) During mealtimes, both he and his inmates notified County and NaphCare, Inc., employees that he required insulin. (*Id.*)

g. Additionally, during these three days, Mr. Bach's wife and Plaintiff Cecilia Bach was receiving notifications that the insulin pump was empty, and she frantically visited the jail multiple times to deliver insulin to her husband but was told by County and NaphCare, Inc. employees that Mr. Bach would be taken care of by the SDCJ medical staff and deputies. (*Id.* at ¶ 41.)

5

GOMEZ TRIAL ATTORNEYS

On September 28, 2023, at 03:38 a.m., Keith was discovered dead in his cell with glucose levels that read, "HI" meaning they were greater than 500 ml/dL. (*Id.* at ¶ 40.)

Defendant County's own Deputy Medical Examiner concluded the following:

> "Based on the autopsy findings and the circumstances surrounding the death, as currently understood, the cause of death is diabetic ketoacidosis due to type 1 diabetes mellitus with hypertensive and atherosclerotic cardiovascular disease as a contributing condition. Review of outpatient medical records clearly indicates that Mr. Bach had demonstrable knowledge in managing his diabetes; however, as an inmate, he became reliant on the medical services provided by the jail for continued management of his condition. Following insufficient insulin administration while in custody, Mr. Bach developed diabetic ketoacidosis and died. This occurred despite medical records containing documentation of his medical condition, insulin requirements, when his pump would be depleted of insulin, and multiple unanswered requests for insulin by Mr. Bach and fellow inmates. The death is due to complications of a natural disease. However, considering the inaction (*i.e.*, neglect) characterizing the events leading to inadequate care while incarcerated of Mr. Bach's health conditions and ultimately, his death, the manner of death is classified as homicide." (*Id.* at ¶ 47.)

Plaintiff also alleged the following regarding the history of unconstitutional policies, customs, and failure to train employees at the SDCJ, by the County and NaphCare, Inc., as well as the Sheriff, Undersheriff, and Chief Medical Officer:

a. Between 2006 and 2020, a total of 185 people died in jails run by the San Diego County Sheriff's Department. (*Id.* at ¶ 51.)

b. In 2021, a record high of 18 deaths in San Diego County Sheriff's jails were reported—a rate higher than any other large county across the state. (*Id.*)

c. In 2023, 13 people died in San Diego County Sheriff's jails. (*Id.* at ¶ 52.)

d. The California State Auditor completed an audit of the San Diego County Sheriff's Department in February 2022, and its report shed light on the deficiencies and noted the following deficiencies: 1) Insufficient health evaluations at intake; 2) Inconsistent follow-up care; 3) Inadequate safety checks; 4) Unnecessary delays in performing lifesaving measures; 5) Deficiencies in medical and mental health care system. (*Id.* at ¶ 55.)

GOMEZ TRIAL ATTORNEYS

Case No.: 3:24-cv-01687-W-BJC

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

e. The San Diego Citizens' Law Enforcement Review Board (hereinafter "CLERB") reviewed the data representing in-custody deaths in San Diego County Sheriff's jails over the past 10 years, and the results were released in April 2022, concluding, in pertinent part: 1) San Diego jails have the highest number of unexplained deaths compared with all other California counties when controlling for jail population; 2) The risk of overdose/accidental deaths is the greatest in San Diego jails; 3) Elevated risk of death appears to be isolated to the unsentenced jail population. (*Id*. at ¶ 60.)

f. The County and NaphCare, Inc., at the SDCJ, have a history of insufficient insulin administration to inmates while in custody. (*Id*. at ¶ 62.)

g. At the time of Mr. Bach's death, the County and NaphCare, Inc.: 1) Failed to properly house individuals to ensure their safety and wellbeing; 2) Left individuals unattended in their cells for extended periods despite signs of medical or mental distress; 3) Failed to summon medical or mental health care when obviously necessary; 4) Failed to coordinate, share, or update internal information systems with critical medical or mental health information; 5) Failed to adequately staff the medical services division. (*Id*. at ¶ 61.)

h. Over the course of the years, numerous complaints were made to the Sheriff, Undersheriff, and the County's Chief Medical Officer, by inmates, family members of inmates, community members, and the County's and NaphCare Inc.'s own staff regarding medical neglect, staff misconduct, injuries in custody, and deaths in custody, yet these complaints were deliberately ignored. (*Id*. at ¶ 63-64.)

i. Accordingly, at the time of Mr. Bach's death, the County and NaphCare, Inc. had *de facto* policies and/or widespread, longstanding deficient policies, practices, and customs, related to providing medical care to inmates held at the SDCJ. (*Id*. at ¶ 61.)

j. Accordingly, at the time of Mr. Bach's death, the County and NaphCare, Inc. failed to train, supervise, and discipline medical doctors and nurses on the necessary care

GOMEZ TRIAL ATTORNEYS

1   of inmates suffering from serious medical conditions, such as Mr. Bach's. *Id.* at ¶

2   105). Such training included but is not limited to carefully monitoring patients

3   exhibiting symptoms of serious medical conditions such as Mr. Bach during

4   booking. (*Id.* at ¶ 110.)

5       As a result of Defendants' failures and deliberate indifference to Mr. Bach's and

6   other inmates' constitutional rights, Mr. Bach suffered a completely preventable, but

7   horrifying death. (*Id.* at ¶ 21, 47,129.) As a result, Plaintiff Cecilia Bach lost her husband

8   of decades. (*Id.* at ¶ 22, 184.)

### III.  <u>STANDARD OF REVIEW</u>

10      Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a

11  claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule

12  12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or

13  sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police

14  Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2),

15  the plaintiff is required only to set forth a "short and plain statement of the claim showing

16  that the pleader is entitled to relief," and "give the defendant fair notice of what the . . .

17  claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S.

18  544, 555 (2007). To survive a motion to dismiss, a complaint need only contain sufficient

19  facts to suggest a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

21      After *Twombly* and *Iqbal*, the Ninth Circuit identified and addressed conflicts in

22  the Supreme Court's jurisprudence on the pleading requirements applicable to civil

23  actions. The court held that there were two principles common to all: First, to be entitled

24  to the presumption of truth, allegations in a complaint or counterclaim may not simply

25  recite the elements of a cause of action but must contain sufficient allegations of

26  underlying facts to give fair notice and to enable the opposing party to defend itself

27  effectively. Second, the factual allegations that are taken as true must plausibly suggest

28  an entitlement to relief, such that it is not unfair to require the opposing party to be

Case No.: 3:24-cv-01687-W-BJC

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

subjected to the expense of discovery and continued litigation. *Starr v. Baca*, 652 F.3d 1202, 1212-16 (9th Cir. 2011).

Regarding section 1983 claims specifically, the *Starr* standard applies to pleading policy or custom for claims against municipal entities. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). All ambiguities or doubts must also be resolved in the plaintiff's favor. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

Finally, even where a complaint may otherwise be subject to dismissal under Rule 12(b)(6), leave to amend should be granted with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

## IV.    ARGUMENT

### A. The Allegations of Deliberate Indifference in Plaintiff's Complaint are Overwhelming

"When a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

And although, a stringent standard, whether there was deliberate indifference is generally a question for the jury. *Lee v. City of L.A.*, 250 F.3d 668, 682 (9th Cir. 2001).

The deliberate indifference standard for municipal liability under section 1983 is also an objective inquiry. *Castro v. City of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

The indifference of city officials may be shown where, "in light of the duties assigned to specific … employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the

9

policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *see also Henry v. Cnty. of Shasta*, 137 F.3d 1372, 1372 (9th Cir. 1998) (order) (amending originally filed opinion to include statement that turning blind eye to constitutional violation can demonstrate deliberate indifference).

Failing to take corrective action after notice of constitutional violations amounts to deliberate indifference. *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1182 (9th Cir. 2007) (concluding that allegations that school officials knew of alleged violation and failed to take corrective action were sufficient to state a claim); *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446–47 (9th Cir. 1991) (en banc) (concluding that knowledge of a policy and practice of overcrowding that allegedly resulted in inmate's rape could be sufficient to establish liability).

"A plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011).

Here, like in the cases cited above Plaintiff alleged specific policies that lead to violations of inmates' rights to adequate medical care at the SDCJ. For example, improper housing record-keeping, improper dissemination of inmate medical record information, leaving individuals unattended in their cells for extended periods despite signs of medical or mental distress, failing to summon medical or mental health care when obviously necessary, failing to adequately staff the medical services division. In addition, Plaintiff alleged specific instances of actual notice of these failed policies as well as known, shocking disparities in the numbers of inmate deaths in San Diego versus other places, which would provide constructive notice of the failed policies. Moreover, the highly predictable consequence of failed policies and/or lack of training regarding the dissemination of inmate medical information, is serious bodily injury, or, like here, death.

GOMEZ TRIAL ATTORNEYS

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

**B. Plaintiff Sufficiently Pled Her Cause of Action for Wrongful Death Against the County and its Supervisory Officials for their tortious violations of Government Code section 845.6, the Bane Act, in addition to violations of Substantive Due Process under the Fourteenth Amendment**

A wrongful-death action may be brought by the decedent's "surviving spouse, domestic partner, children" or anyone who would be entitled to property in intestate succession. Cal. Code Civ. Proc., § 377.60. A person with wrongful-death standing may collect damages which "under all circumstances of the case, may be just." Cal. Code Civ. Proc., § 377.61. Plaintiff acknowledges that the "wrongful death action must be premised on a tortious act." *Barrett v. Superior Court*, 222 Cal.App.3d 1176, 1184 (1990). "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Lattimore v. Dickey*, 239Cal.App.4th 959, 968 (2015). Wrongful act' as used in section 377.60 means any kind of tortious act." *Barrett*, 222 Cal.App.3d at 1191.

Except as otherwise provided by statute, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity, or a public employee, or any other person. (Cal. Gov. Code, § 815(a).) A public entity is vicariously liable for the negligence of its employee acting in the scope of his/her employment (Cal. Gov. Code, § 815.2(a)) Here, Plaintiff has alleged various tort violations against the County and its Supervisory Defendants.

### a. *Defendants' violation of Cal. Gov. Code § 845.6*

Section 845.6 creates a narrow exception to governmental immunity in cases when a public employee fails to take reasonable action to summon needed medical treatment. There is a "distinction for failure to summon medical care - for which the State can be held liable under section 845.6 - on the one hand, and negligence in providing care - for which the State is immune - on the other hand." *Castaneda v. Department of Corrections and Rehabilitation* (2013) 212 Cal. App.4th 1051, 1071. However, section 845.6 imposes not just a duty to summon medical care, but to summon care that a prisoner "actually

11

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

needs." *Id.* at 1074. Under section 845.6, a plaintiff must allege that "(1) the public employee knew or had reason to know of the need (2) for immediate medical care, and (3) failed to reasonably summon such care." *Jett v. Penner*, 439 F.3d 1091, 1098–99 (9th Cir. 2006).

Here, Plaintiff alleges not only that the administration of insulin was insufficient after it was ordered by Medical Provider Doe 2. Plaintiff also alleges that Mr. Bach as well as other fellow inmates, were pleading with County deputies to administer Decedent's insulin because Decedent could not eat at all anymore. This fact was established by the County's own employee and is a specific instance of a violation of section 845.6.

### b. *Defendants' Violation of the Bane Act*

The Bane Act provides a private cause of action against anyone who "interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of California." Cal. Civil Code § 52.1(a) & (b). To obtain relief under Section 52.1, a plaintiff does not need to allege that a defendant acted with discriminatory animus or intent; liability only requires interference or attempted interference with the plaintiff's legal rights by the requisite threats, intimidation, or coercion. *Venegas v. County of Los Angeles,* 32 Cal.4th 820, 841-843 (2004). "The essence of a Bane Act claim is that the defendant, by the specified improper means, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.* 149 Cal.App.4th 860, 883 (2007).

Further, by its terms, Section 52.1 *does not* require a showing of violence or threat of violence. (*Cole v. Doe 1 thru 2 Officers of City of Emeryville Police Dept.*, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005). The only place where section 52.1 specifically requires

GOMEZ TRIAL ATTORNEYS

the threat of violence is where the threats, intimidation or coercion are being accomplished by speech alone. The test for whether a defendant violates section 52.1 for interference with a legal right by threats, intimidation or coercion is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated, threatened or coerced by the actions of the defendants. *Richardson v. City of Antioch* 722 F.Supp.2d 1133, 1147 (2010); *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289-90 (9th Cir. 2001).

Both public entities and private companies are vicariously liable for Bane Act violations. Cal. Gov. Code, § 815.2.

Here, Plaintiff's Bane Act claim is based on Eighth (through the Fourteenth Amendments' Substantive Due Process Clause) and First Amendment violations. Mr. Bach was entirely dependent on and vulnerable to NaphCare, Inc.'s and the County's care and pleaded with them to administer insulin. Any reasonable person, in his shoes, who, after several pleas for help is still not administered insulin, would necessarily be intimidated. For example, he was coerced by Defendants' cruel and reckless decision to deprive him of life-saving insulin, into not eating at all- as stated in the Medical Examiner's report. Clearly, Defendants' actions resulted in a deprivation of Mr. Bach's constitutional rights, which ultimately, led to his death.

## C. Section 844.6 Immunity Does Not Apply to Plaintiff's *Monell* Failure to Train and Supervise Claims

The County is conflating state law failure to train and supervise claims versus Plaintiff's federal *Monell* claims for failure to train and supervise.

Regarding *Monell* claims, the doctrine of "qualified immunity protects government officials 'from civil damages [resulting from federal law claims] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); see *Venegas v. Cnty. of Los Angeles*, 153 Cal.App.4th 1230, 1243 (2007) ("The doctrine of

13

qualified governmental immunity is a federal doctrine that does not extend to state tort claims against government employees."); *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040-41 (9th Cir. 2018) (holding that "qualified immunity is not available for those [California state law] claims."). Qualified immunity is therefore inapplicable here to the failure to train and supervise claims under *Monell*.

As to Plaintiff's state law claims against the County, Section 845.6 is an exception to Section 844.6 and prescribes that "a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody"-but that a "public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care." Regarding the Bane Act claims, they are brought for violations of constitutional rights. Prison guards and their employers cannot use a qualified immunity defense (and should not be able to bring an unrelated state law immunity defense) under the Bane Act in cases where they fail to provide inmates with medical care in violation of Constitutional rights. (Cal. Gov. Code § 52.1.) Accordingly, there is no Section 844.6 immunity regarding either of these two state law claims through which Plaintiff alleges negligence against the County and its employees.

### D. Plaintiff Needs to Discover the True Identities of the Deputies Employed by the County Who Failed to Provide Insulin to Mr. Bach

Except as provided by statute, a public employee is liable for injury caused by his/her act or omission to the same extent as a private person, and said liability is subject to any defenses that would be available to the public employee if he/she were a private person. (Cal. Gov. Code, § 820.)

In addition, employees acting under color of state law who cause a constitutional injury, may be held liable. (42. U.S.C § 1983.) Prison officials, when acting in their

official capacity, are acting under color of state law. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc).

Here, there is little doubt, or at least a significant question of fact, that the County's employees were acting under color of law and violated Decedent's Constitutional rights. Plaintiff has not had the opportunity to discover the true identities of DOES 1-100, who were directly involved in the events and circumstances leading to Mr. Bach's death. For example, Plaintiff needs to conduct discovery to determine who the employees were who refused to provide Plaintiff insulin when he couldn't eat at lunchtime, as well as the employees who heard the insulin monitor beeping, yet ignored it. Plaintiff also needs to discover the true names and identities of the deputies who turned her away from the SDCJ when she took much needed insulin to her husband.

Plaintiff attempted to provide as much notice as possible regarding the identities of these Does by specifying which Does were medical providers as opposed to deputies, or supervising deputies. There are many facts and names that are still to be discovered, and Plaintiff will be prejudiced if the court dismisses the Doe Defendants. Whereas Defendants will not be prejudiced given that this is not a diversity jurisdiction case.

**E. Plaintiff Sufficiently Pled Her 42 U.S.C. § 1983 *Monell* Claims for- Wrongful Death, Deliberate Indifference to Serious Medical Needs, and Right of Association Against Defendant the County and its Supervising Officers and Employees (Medical Provider Doe(s))**

"Traditionally, the requirements for relief under [§] 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

"[Section] 1983 … contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right." *Daniels v. Williams*, 474 U.S. 327, 329–30 (1986). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative

15

act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

## 1. Monell Municipal Liability Against the County

"[M]unicipalities and other local government units … [are] among those persons to whom section 1983 applies." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Counties are persons for purposes of section 1983. *See Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014) ("[W]hen a California sheriff's department performs the function of conducting criminal investigations, it is a county actor subject to suit under § 1983").

Plaintiff agrees that a local governmental unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability under section 1983. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

However, where a plaintiff can show underlying constitutional deprivations due to the government's policies or customs, a section 1983 claim is viable. *See Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020); *Brown*, 520 U.S. at 403.

Further, a plaintiff may also establish municipal liability by demonstrating that the constitutional violation was caused by a failure to train government employees adequately. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–91 (1989).

### a. The County's deliberate, unconstitutional policies and customs

To prevail, a plaintiff must allege and establish that the government had a deliberate policy, custom, or practice that caused the constitutional violation [he or she] suffered." *A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012). For purposes of surviving a Rule 12(b)(6) challenge based on an unconstitutional policy or custom, a plaintiff must simply show "(1) [the plaintiff] had a constitutional right of which he was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate

indifference to his constitutional right; and (4) 'the policy is the moving force behind the constitutional violation.'" *Gordon v. Cnty. of Orange*, 6 F.4th 961, 973 (9th Cir. 2021) (citing *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).

There is no heightened pleading standard with respect to the "policy or custom" requirement. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 167–68 (1993). Then, the deliberate indifference standard is an objective inquiry. *Castro*, 833 F.3d at 1076.

A policy of inaction may be a municipal policy within the meaning of *Monell*. *See Hyun Ju Park v. City & Cnty. of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020).

Further, even if there is not an explicit policy, a plaintiff may establish municipal liability upon a showing that there is a permanent and well-settled practice by the municipality that gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021).

Ratification of the decisions of a subordinate by an official with final decision-making authority can also be a policy for purposes of municipal liability under section 1983. See *Praprotnik*, 485 U.S. at 127; *See McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1986) (suggesting that failure of prison officials to discipline guards after impermissible shakedown search and failure to admit the guards' conduct was in error could be interpreted as a municipal policy). "When a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

Here, a constitutional violation for deliberate deprivation of medical needs is a cognizable constitutional right for purposes of satisfying the first element of *Monell* Municipal Liability. Further, with regards to the second element, the uniformity in which both the County deputies and NaphCare, Inc.'s medical staff acted in reckless disregard

17

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC

of decedent's rights shows the existence of the practice or custom of inaction. In addition, Plaintiff alleged that the County contracted exclusively with Defendant NaphCare, Inc., at least since 2022 provide medical care and treatment at the SDCJ and that the SDCJ, has a history of insufficient insulin administration to inmates while in custody, during this same time. Specifically, Plaintiff alleged that the County and NaphCare, Inc., failed to properly house individuals to ensure their safety and wellbeing- based on their medical needs, left individuals unattended in their cells for extended periods despite signs of medical distress, failed to summon medical or mental health care when obviously necessary, failed to coordinate, share, or update internal information systems with critical medical health information, and failed to adequately staff the medical services division. These are specific deficient and unconstitutional policies and customs of the County and NaphCare, Inc., that have been alleged in Plaintiff's complaint, with cited sources. Plaintiff also alleged that these deficient policies and practices were in place before and after NaphCare, Inc.'s contract with the County – making this well-settled practice, sufficient to give rise to *Monell* liability.

As to the third element, Plaintiff presented a litany of specific instances when NaphCare, Inc., and the County were notified of these deficient and unconstitutional policies and customs over the years- *i.e.*, notice was provided by inmates, family members of inmates, community members, and the County's and NaphCare Inc.'s own staff, as well as by the California State Auditor, the CLERB, Decedent Keith Bach himself, and his fellow inmates.

Finally, these policies, are directly related to medical care of inmates, specifically those who need insulin. For example, the failure to place diabetic inmates in proper housing based on their needs and to monitor them in their cells or while they are being fed is directly linked to Mr. Bach's deprivation of substantive due process, and ultimate death. Similarly, NaphCare, Inc.'s, and the County's failure to coordinate and communicate the information provided to them in medical records from Scripps Mercy,

18

which contained critical medical health information, and to adequately inform medical staff, was also directly linked the violation of Mr. Bach's rights. Finally, Plaintiff pled with specificity that County employees who were responsible for feeding Mr. Bach and other inmates were specifically aware of Mr. Bach's needs, after hearing his pleas and beeping pump, but County and medical staff still failed to adequately administer insulin-precisely evidencing these failed and deficient policies and customs.

### b. *The County's failure to train and supervise its employees*

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153-54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

Satisfying this standard requires proof that the entity had actual or constructive notice that a particular omission in their training program will cause municipal employees to violate citizens constitutional rights. *Kirkpatrick*, 843 F.3d at 794.

A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train to demonstrate the public entity's notice that a training policy is deficient and the entity's continued adherence to a policy it knew or should have known has failed to prevent tortious conduct by employees.... *Connick v. Thompson*, 563 U.S. 51, 62 (2011). However, in a narrow range of circumstances, a pattern of similar constitutional violations may not be required to show deliberate indifference where violations of constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to train. *Id.* at 63.

As discussed supra, the County's policy makers and officers with final decision-making authority deliberately ignored the potential consequences of failing to train

19

employees to properly convey information in a patient's medical charts. The County's supervisorial responsibilities included properly training and supervising that critical medical information annotated in Mr. Bach's medical records from Scripps, provided to and confirmed by Medical Provider Does 1 and 2 themselves, was sufficiently conveyed to those charged with Mr. Bach's in custody detention.

Plaintiff also alleges that NaphCare, Inc., and the County were notified of the improper training and supervision of NaphCare, Inc., and County employees at the SDCJ over the years- *i.e.*, notice was provided by inmates, family members of inmates, community members, and the County's and NaphCare Inc.'s own staff, as well as by the California State Auditor, the CLERB, Decedent himself, and his fellow inmates.

## 2. <u>Officials and Employees Acting Under Color of State Law</u>

"There is no 'rigid formula' for determining whether a state or local law official is acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1068 (9th Cir. 2006). "The Supreme Court has developed four different tests that 'aid … in identifying state action: '(1) public function; (2) joint action; (3) governmental compulsion or coercion; and (4) governmental nexus.'" *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d 1161, 1167 (9th Cir.).

"[S]atisfaction of any one test is sufficient to find state action …." *Pasadena Republican Club v. W. Just. Ctr.*, 985 F.3d at 1167. The question of whether a person who has allegedly caused a constitutional injury was acting under color of state law is a factual determination. *Id*.

Even if the deprivation represents an abuse of authority or lies outside the authority of the official, if the official is acting within the scope of his or her employment, the person is still acting under color of state law. *See Anderson*, 451 F.3d at 1068–69.

Prison officials, when acting in their official capacity, are acting under color of state law. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985) (en banc). Physicians who contract with prisons to

provide medical services are acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 53–54 (1988); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991).

Again, the County's employees, including but not limited to the County Supervisor Defendants were exercising the authority given to them by the County and the Sheriff's Department when they failed to provide Mr. Bach the much-needed insulin.

### 3. The County's and its employees' indifference to serious medical needs in Violation of Mr. Bach's Substantive Due Process Rights

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Consequently, the government is obligated to provide adequate medical care to incarcerated people, and the failure to do so is a violation of the Eighth Amendment and gives rise to a deliberate indifference claim under Section 1983. *Estelle*, 429 U.S. at 103 - 05.

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Estelle*, 429 U.S. at 104. This includes "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard— deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

As to the first element, California caselaw makes clear that prison officials violate the Constitution when they 'deny, delay or intentionally interfere' with needed medical treatment." *Sandoval v. Cnty. Of San Diego*, 985 F.3d 657, 679 (9th Cir. 2021). If the prison's medical staff is not competent to examine, diagnose, and treat inmates' medical problems, they must "refer prisoners to others who can." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

"[T]o show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to the

plaintiff's health." *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016). The defendant must have notice of the prisoner's serious medical need. *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1986). And "prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

The subjective standard for deliberate indifference is essentially criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Further, in this case, because Decedent was a pre-trial detainee, he was entitled to the more expansive protections of the Due Process Clause of the Fourteenth Amendment. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016). While the Eighth Amendment standard to prove deliberate indifference is clear (the official must have a subjective awareness of the risk of harm), the deliberate indifference standard under the Fourteenth Amendment is less clear. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1069 (9th Cir. 2016). However, the court does not distinguish among pretrial and post-conviction detainees for purposes of the excessive force, conditions of confinement, and medical care deference instructions." *Shorter v. Baca*, 895 F.3d 1176, 1182 n.4 (9th Cir. 2018).

Here, Plaintiff has satisfied even the more stringent standard. Plaintiff has provided an overwhelming number of facts to demonstrate NaphCare, Inc., its medical staff, and County officials and employees denied, delayed, and intentionally interfered with Mr. Bach's constitutional right to receive adequate medical care. Mr. Bach died from what the County's own Medical Examiner deemed medical neglect. Similarly, Plaintiff established in more ways than one, how NaphCare, Inc., and County staff was aware of Decedent Keith Bach's serious medical needs and how they consciously disregarded his medical records, his and his inmates' pleas for help, Plaintiff Cecilia Bach's frantic visits to the SDCJ, Scripps Mercy Hospital medical notes, and even their own employees' (Medical Provider Doe 1 and 2's) medical notes.

GOMEZ TRIAL ATTORNEYS

1

### 4. <u>The County's and its employees' violation of Plaintiff's and Mr. Bach's First Amendment Associational Rights</u>

2

3

The prisoner's incarcerated status, by necessity, restricts the scope of the prisoner's First Amendment associational rights <u>when the restrictions bear a legitimate penological</u>

4

<u>interest</u>. *See Overton v. Bazzetta*, 539 U.S. 126, 131–32 (2003), <u>emphasis added</u>.

5

6

Here, there is no plausible argument that repeatedly denying Plaintiff Cecilia Bach the ability to see her husband, to provide him with his much-needed insulin, was justified

7

by any legitimate penological interest.

8

## V. <u>LEAVE TO AMEND</u>

9

10

In the event the Court grants dismissal of any claim in the complaint, Plaintiff requests leave of court to file an amended complaint. When amending the complaint

11

would not be futile, the Court should grant a plaintiff's request for leave to file an

12

amended complaint in order cure the deficiencies. *See DeSoto*, 957 F.2d at 658; *Schreiber*,

13

806 F.2d at 1401.

14

## VI. <u>CONCLUSION</u>

15

16

To defeat Defendant's motion to dismiss, Plaintiff need only plead a plausible claim for each of her causes of action. She has done that and more. Plaintiff respectfully

17

requests that the Court deny the motion, or, in the alternative, allow Plaintiff to amend

18

her complaint to address any shortcomings.

19

20

Dated: January 6, 2025                    **GOMEZ TRIAL ATTORNEYS**

21

22

23

By: *\_\_\_/s/Brian R. Mason, Esq.\_\_\_*
         Brian R. Mason, Esq.

24

         Attorneys for Plaintiff,

25

CECILIA BACH

26

27

28

GOMEZ TRIAL
ATTORNEYS

PLAINTIFF'S OPPOSITION TO DEFENDANT NAPHCARE'S MOTION TO DISMISS FAC