UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA BACH, individually and as Successor in Interest to the ESTATE OF MR. KEITH BACH,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.:  24-cv-1687 W (DTF)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THIRD-PARTY DEFENDANT CORRECTIONAL HEALTHCARE PARTNERS, INC'S MOTION TO DISMISS [DOC. 43]** |

Pending before the Court is Third-Party Defendant Correctional Healthcare Partners, Inc.'s motion to dismiss the Third-Party Complaint under Federal Rule of Civil Procedure 12(b)(6). Third-Party Plaintiff NaphCare, Inc. opposes the motion.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ.L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the motion to dismiss [Doc. 43] **WITHOUT LEAVE TO AMEND**.

## I. FACTUAL BACKGROUND

Because the complaint's factual allegations are assumed true on a motion to dismiss, the following factual background is taken from the First Amended Complaint ("FAC") and Third-Party Complaint ("TPC").

### A. Overview

This lawsuit arises from the death of Keith Bach while in custody at the San Diego County Central Jail ("SDCJ"). (*FAC* [Doc. 9] ¶ 1.) At the time of Mr. Bach's death, he was 63 and diabetic. (*Id.* ¶¶ 21, 23.) He had successfully managed his diabetes with a MiniMed continuous glucose monitor and insulin pump that administered fast-acting insulin. (*Id.* ¶ 23.)

Third-Party Plaintiff / Defendant NaphCare, Inc. is a third-party contractor providing medical services to the San Diego County Sheriff's Department since at least June of 2022. (*FAC* ¶ 13.) At the time of Mr. Bach's death, NaphCare, Inc. and its medical staff were responsible for providing on-site medical services to detainees in the SDCJ, including Mr. Bach. (*Id.*) "As a benefit to NaphCare, the affiliated entity NaphCare of San Diego LLC entered into a contract with [Third-Party Defendant Correctional Healthcare Partners, Inc. ("Correctional Healthcare")] to provide on-site services, sick call, and on call services (after-hours calls) to detainees at the San Diego County Jails, including SDCJ." (*TPC* ¶ 12.)

### B. The FAC's Allegations

On September 25, 2023, Mr. Bach was arrested by the Chula Vista Police Department. (*FAC* ¶ 24.) Before being booked into SDCJ, he was taken to Scripps Mercy Hospital for medical clearance. (*Id.* ¶ 26.) A notation on a document the doctors provided to "Defendants" indicated that Mr. Bach's insulin pump needed to be refilled. (*Id.* ¶ 28.)

While being booked into SDCJ, Mr. Bach's glucose levels were elevated and his insulin pump was beeping, indicating it needed to be refilled. (*FAC* ¶ 27.) At some point

he "experienced a syncopal episode and was transported . . . in an ambulance back to Scripps Mercy Hospital Emergency Department." (*Id.* ¶ 29.) Mr. Bach was admitted at 10:40 p.m. and released at 2:04 a.m. (*Id.* ¶¶ 30, 31.) Mr. Bach's medical records also indicated he had type-1 diabetes and required a glucose monitor and insulin pump. (*Id.* ¶ 32.)

At 4:00 a.m. on September 26, Mr. Bach notified Medical Provider Doe 1, who was the nurse practitioner performing his initial intake at SDCJ, that his insulin pump would be depleted of insulin in approximately 28 hours. (*FAC* ¶ 33.) At 12:00 p.m., Mr. Bach was evaluated by Medical Provider Doe 2, a second nurse practitioner, who placed an order for 10 units of insulin, three times a day. (*Id.* ¶ 34.) However, Mr. Bach was only given 10 units of insulin at 4:43 p.m. (*Id.* ¶ 35.) As a result, by 1:17 a.m. on September 27, Mr. Bach's blood glucose level was 322 mg/dL, and he repeatedly requested 20 more units of insulin. (*Id.* ¶ 36.) At 1:51 a.m., he was given 10 units of insulin, which was his last dose before he died on September 28. (*Id.* ¶ 37.)

From 2:00 a.m. to 9:00 p.m. on September 27, Mr. Bach was not seen by a medical provider. (*FAC* ¶ 38.) During this time, he asked several Deputy Doe defendants for insulin, but his requests were ignored. (*Id.*) In addition, other inmates around Mr. Bach attempted to assist him by requesting insulin and pointing out to the Deputy Does and Deputy Supervisor Does that Bach's insulin pump was beeping and empty. (*Id.*)

During mealtimes on September 27, 2023, Mr. Bach gave his food to fellow inmates because he did not want to eat without access to insulin. (*FAC* ¶ 39.) Additionally, during mealtimes, Mr. Bach and other inmates alerted Deputy Does and Deputy Supervisor Does that Mr. Bach needed insulin. (*Id.*)

Meanwhile, Cecilia Bach, Mr. Bach's wife, continued to receive notifications that Mr. Bach's insulin pump was empty. (*FAC* ¶¶ 22, 41.) She therefore frantically visited the jail multiple times to deliver insulin to her husband but was told by "Defendants" that he would be taken care of by the SDCJ medical staff and deputies. (*Id.*) Contrary to these

statements, on September 28, 2023, at 03:38 a.m., Mr. Bach was discovered dead in his cell with glucose levels exceeding 500 ml/dL. (*Id.* at ¶ 40.)

### C. Ms. Bach files this lawsuit

On September 20, 2024, Ms. Bach filed this lawsuit. On December 6, 2024, Ms. Bach filed the FAC alleging the following causes of action: (1) Deliberate Indifference to Serious Medical Needs under 42 U.S.C. §1983; (2) Wrongful Death under 42 U.S.C. §1983; (3) Right of Association under 42 U.S.C. §1983; (4) Failure to Properly Train and Supervise under 42 U.S.C. §1983; (5) *Monell* Municipal Liability under 42 U.S.C. §1983; (6) Failure to Summon Medical Care, Cal. Gov Code §845.6; (7) Wrongful Death & Survival Action, CCP §§ 377.30, 377.60 *et seq.*; (8) Negligence; and (9) Bane Act, Cal. Civ. Code §52.1. Defendants County of San Diego and NaphCare then moved to dismiss the FAC. On June 23, 2025, this Court granted in part the motions as follows:

(1) The second and third causes of action were dismissed without leave to amend.

(2) The sixth cause of action was dismissed without leave to amend as to NaphCare and the Medical Provider Does; and

(3) The first, sixth, seventh, eighth and ninth cause of action were dismissed with leave to amend as to Defendants Kelly A. Martinez, Rich Williams and Dr. Jon Montgomery, D.O.[1]

(*MTD Order* [Doc. 26] 26:5–10.)

On August 25, 2025, NaphCare filed the TPC against Correctional Healthcare, among others, asserting the following causes of action: (1) Equitable Indemnity; (2) Contribution; (3) Professional Negligence; (4) Contractual Indemnification; and

---

[1] The order set a deadline of July 14, 2025 to file a second amended complaint. (*MTD Order* 26:11–12.) Plaintiff did not amend the FAC.

4

(5) Declaratory Relief. (*See TPC*.) On October 21, 2025, Correctional Healthcare filed the pending motion to dismiss.

## II. LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Although well-pled allegations are assumed true, a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## III. ANALYSIS

### A. First, Second, Fourth and Fifth Causes of Action

Correctional Healthcare seeks dismissal of NaphCare's First, Second, Fourth, and Fifth causes of action "to the extent they seek indemnification or contribution for claims

5

made pursuant to 42 U.S.C. section 1983 and California *Civil Code* section 52.1." (*MTD P&A* [Doc. 43-1] 1:20–22 (emphasis in original).) In response, NaphCare does not dispute that indemnification and contribution are not available for the section 1983 causes of action, and instead clarifies it is only seeking indemnification and contribution for the "operative state causes of action." (*Opp'n* [Doc. 50] 1:9–11.) Thus, the only issue is whether NaphCare's claim for indemnification and contribution for liability under the Bane Act, California Civil Code § 52.1, is barred as a matter of law.

Correctional Healthcare concedes that there is no case directly on point regarding the Bane Act. It argues, however, that Plaintiff's Bane Act claim is premised on deliberate indifference to Mr. Bach's serious medical needs, and thus "Plaintiff will need to establish 'specific intent' to commit the constitutional violation by defendants in order to succeed on this cause of action." (*MTD P&A* [Doc 43-1] 7:24–8:2.) Correctional Healthcare then asserts that because "California courts have repeatedly held that there is no indemnity for intentional torts, including civil rights violations," NaphCare cannot seek indemnity or contribution for liability under the Bane Act. (*Id.* 8:3–25.)

The problem with Correctional Healthcare's argument is that it assumes Plaintiff must establish that defendants acted intentionally in order to prevail on the Bane Act cause of action. This assumption lacks merit.

Plaintiff's Bane Act cause of action is based on the allegation that Defendants, including NaphCare's employees, "acted, or failed to act, with deliberate indifference to the substantial risk of Keith's health and safety while he was in their custody and care." (*FAC* [Doc. 9] ¶ 189.) Because Mr. Bach was a pretrial detainee, the deliberate-indifference claim arises under the Fourteenth Amendment and requires Plaintiff to establish:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment];

>   (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
>   (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
>   (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. County of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018)). Significantly, with respect to the third element, "the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent—*something akin to reckless disregard*.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)) (emphasis added). Accordingly, contrary to Correctional Healthcare's contention, liability under the Bane Act does not require intentional misconduct; a reckless disregard is sufficient.

Because NaphCare's liability under the Bane Act does not require a showing of intentional misconduct, Correctional Healthcare's motion to dismiss the contribution and indemnity causes of action to the extent they are based on the Bane Act cause of action will be denied.

### B. Third Cause of Action

The third cause of action is for professional negligence. Correctional Healthcare seeks dismissal of this cause of action on the ground that NaphCare lacks standing, among others. (*MTD P&A* 9:3–10:14.)

To prevail on the professional negligence cause of action, NaphCare must establish that Correctional Healthcare owed it a duty of care. *Hanson v. Grode*, 76 Cal.App.4th 601, 606 (1999). "It has long been held that an essential element of a cause of action for

medical malpractice is a physician-patient relationship giving rise to a duty of care." *Mero v. Sadoff*, 31 Cal.App.4t 1466, 1471 (1995).

Here, there are no allegations remotely suggesting a physician-patient relationship between Correctional Healthcare and NaphCare. In fact, the TPC contradicts such a suggestion. For this reason, NaphCare's third cause of action fails to state a claim against Correctional Healthcare.

In its opposition, NaphCare points to principles of indemnity and contribution, and appears to contend that because it "seeks only equitable remedies under this cause of action," it is sufficiently pled. (*Opp'n* 11:28–12:1.) But NaphCare ignores the lack of a duty, which is an essential element to the professional negligence cause of action, regardless of the remedies sought. NaphCare also seems to contend that because it is entitled to declaratory relief, the professional negligence cause of action is sufficiently pled. Not only does this argument not make sense, but it ignores the fact that the TPC already includes a separate cause of action for declaratory relief.

Because Correctional Healthcare did not owe a duty of care to NaphCare, NaphCare lacks standing to pursue the cause of action for professional negligence.

## IV.  CONCLUSION & ORDER

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Correctional Healthcare's motion to dismiss [Doc. 43]. To the extent the TPC seeks indemnity and contribution for liability under Plaintiff's section 1983 causes of action, such claims are barred. The motion is denied as to liability under the Bane Act.

**IT IS SO ORDERED.**

Dated:  January 14, 2026

Hon. Thomas J. Whelan
United States District Judge