UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECILIA BACH, individually and as Successor in Interest to the ESTATE OF MR. KEITH BACH,<br><br>                              Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                              Defendants. | Case No.:  24-cv-1687 W (DTF)<br><br>**ORDER GRANTING MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT [DOC. 45]** |

Pending before the Court is Plaintiff's motion for leave to amend the First Amended Complaint ("FAC") under Federal Rule of Civil Procedure 15(a)(2) to add Correctional Healthcare Partners, Inc. ("Correctional Healthcare") and its employee Nicholas Kahl as defendants. Correctional Healthcare and Kahl oppose the motion.

The Court decides the matter on the papers submitted and without oral argument. *See* Civ.L.R. 7.1(d)(1).  For the following reasons, the Court **GRANTS** the motion [Doc. 45] and **ORDERS** the Second Amended Complaint filed on or before **February 4, 2026**.

## I. FACTUAL BACKGROUND

This lawsuit arises from the death of Keith Bach while in custody at the San Diego County Central Jail ("SDCJ"). (*FAC* [Doc. 9] ¶ 1.) At the time of Mr. Bach's death, he was 63 and diabetic. (*Id.* ¶¶ 21, 23.) He had successfully managed his diabetes with a MiniMed continuous glucose monitor and insulin pump that administered fast-acting insulin. (*Id.* ¶ 23.)

### A. The FAC's Allegations

On September 25, 2023, Mr. Bach was arrested by the Chula Vista Police Department. (*FAC* ¶ 24.) Before being booked into SDCJ, he was taken to Scripps Mercy Hospital for medical clearance. (*Id.* ¶ 26.) A notation on a document the doctors provided to "Defendants" indicated that Mr. Bach's insulin pump needed to be refilled. (*Id.* ¶ 28.)

While being booked into SDCJ, Mr. Bach's glucose levels were elevated and his insulin pump was beeping, indicating it needed to be refilled. (*FAC* ¶ 27.) At some point he "experienced a syncopal episode and was transported . . . in an ambulance back to Scripps Mercy Hospital Emergency Department." (*Id.* ¶ 29.) Mr. Bach was admitted at 10:40 p.m. and released at 2:04 a.m. (*Id.* ¶¶ 30, 31.) Medical records also indicated Mr. Bach had type-1 diabetes and required a glucose monitor and insulin pump. (*Id.* ¶ 32.)

At 4:00 a.m. on September 26, Mr. Bach notified Medical Provider Doe 1, who was the nurse practitioner performing his initial intake at SDCJ, that his insulin pump would be depleted of insulin in approximately 28 hours. (*FAC* ¶ 33.) At 12:00 p.m., Mr. Bach was evaluated by Medical Provider Doe 2, a second nurse practitioner, who placed an order for 10 units of insulin, three times a day. (*Id.* ¶ 34.) However, Mr. Bach was only given 10 units of insulin at 4:43 p.m. (*Id.* ¶ 35.) As a result, by 1:17 a.m. on September 27, Mr. Bach's blood glucose level was 322 mg/dL, and he repeatedly requested 20 more units of insulin. (*Id.* ¶ 36.) At 1:51 a.m., he was given 10 units of insulin, which was his last dose before he died on September 28. (*Id.* ¶ 37.)

**B.     Ms. Bach files this lawsuit**

On September 20, 2024, Cecilia Bach, Mr. Bach's wife, filed this lawsuit against the County of San Diego and NaphCare, Inc, among others. (*See Compl.* [Doc. 1].) The Complaint alleges five causes of action under 42 U.S.C. § 1983 and four state-based causes of action. Defendant NaphCare is "a third-party contractor providing medical services to the San Diego County Sheriff's Department" and was "responsible for providing medical care staffing and one-site [sic] medical services to detainees in the SDCJ." (*Compl.* ¶ 15; *FAC* ¶ 13.)

On December 6, 2024, Plaintiff filed the FAC.

On August 25, 2025, NaphCare filed a Third-Party Complaint (the "TPC") against Correctional Healthcare, among others, asserting causes of action for: (1) Equitable Indemnity; (2) Contribution; (3) Professional Negligence; (4) Contractual Indemnification; and (5) Declaratory Relief. (*See TPC* [Doc. 36].) According to the TPC, NaphCare's causes of action arise from Correctional Healthcare's "agreement to provide on-site medical providers and the failure to provide safe and adequate medical care to a known Type 1 diabetic in custody by discontinuing his established insulin pump regimen, substituting it with an inappropriate and insufficient treatment plan, and failing to properly monitor Bach after the treatment plan was implemented." (*Id.* ¶ 6.) The TPC further alleges:

> On September 26, 2023, NP Nicholas Kahl ("NP Kahl"), an onsite employee of CHP, assessed Mr. Bach in his holding cell, noted that Bach had an insulin pump, and significantly altered Bach's treatment. NP Kahl prescribed 10 units of Novolin R three times daily with meals for 30 days, replacing Bach's individualized insulin pump therapy. On information and belief, this abrupt change disregarded Bach's variable pump regimen, increased the risk of poor glycemic control, and predisposed him to diabetic ketoacidosis. NP Kahl also ordered four-times-daily blood sugar checks for one month.

(*Id.* ¶ 46.)

After NaphCare filed the TPC, Plaintiff learned of Correctional Healthcare's "specific role in Mr. Bach's medical care." (*Mason Decl.* [Doc. 45-2] ¶ 6.) Plaintiff's counsel then prepared a draft amended complaint and met and conferred with opposing counsel "on the issue." (*Id.* ¶ 15.) On September 25, 2025, a proposed stipulation to file the second amended complaint ("SAC"), along with a copy of the proposed pleading, was sent to counsel for the County of San Diego and NaphCare. (*Id.* ¶ 16.)

On October 2 and 10, Plaintiff's counsel sent follow-up emails regarding the proposed SAC. (*Mason Decl.* ¶¶ 18, 19.) Defendants did not respond. (*Id.* ¶ 20.)

On October 24, 2025, Plaintiff's counsel started a three-week trial in another matter. (*Mason Decl.* ¶ 21.) On November 12, Plaintiff filed the pending motion to amend the FAC to add Correctional Healthcare and NP Kahl as defendants. (*See Notice of Mot.* [Doc. 45].)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) provides that after a responsive pleading has been served, a party may amend its complaint only with the opposing party's consent or leave of court, and that leave "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Granting leave to amend rests in the sound discretion of the district court. *Pisciotta v. Teledyne Industries, Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996). While leave to amend is not to be granted automatically (*Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citations omitted)), the Ninth Circuit has emphasized that leave to amend is to be granted with "extreme liberality." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987) (citation omitted). Thus, in exercising its discretion "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *DCD Program, Ltd.*, 833 F.2d at 186.

Five factors are considered in evaluating a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and

4

1  (5) whether the plaintiff has previously amended the complaint.  *Johnson v. Buckley*, 356
2  F.3d 1067, 1077 (9th Cir. 2004).  The party opposing leave to amend bears the burden of
3  demonstrating why leave should be denied. *DCD Program, Ltd.*, 833 F.2d at 187.

5  **III.   ANALYSIS**
6      **A.   Bad Faith**
7      Correctional Healthcare does not argue that Plaintiff's motion to amend is the
8  result of bad faith. Given that leave to amend is to be granted with extreme liberality, the
9  absence of bad faith favors granting Plaintiff's motion.

11     **B.   Undue delay**
12     Plaintiff contends there was no undue delay in seeking to add Correctional
13 Healthcare and NP Kahl because she "only learned of CHP's specific role in Mr. Bach's
14 care when NaphCare filed its TPC on August 25, 2025." (*P&A* [45-1] 5:24–26.) Before
15 then, Plaintiff contends she did not know "CHP was the entity providing on-site medical
16 services or that CHP's employee NP Kahl made the critical decisions regarding Mr.
17 Bach's insulin regimen." (*Id*. 5:26–28; *Mason Decl.* ¶ 13.)
18     In its opposition, Correctional Healthcare contends Plaintiff has unduly delayed
19 and disputes Plaintiff's contention that she was unaware of it and Kahl's role in Mr.
20 Bach's death. (*Opp'n* [Doc. 56] 4:1.) As support, Correctional Healthcare cites the
21 original Complaint's "detailed allegations regarding the allegedly deficient medical care
22 Bach received while incarcerated," and contends the "allegations make clear that Plaintiff
23 was in possession of the medical records at the time of filing." (*Id.* 4:4–7.) While the
24 Court agrees the Complaint includes detailed allegations, for several reasons, the Court is
25 not persuaded the allegations demonstrate Plaintiff was aware of Correctional Healthcare
26 and NP Kahl's identity or role before the TPC was filed.
27     In support of the motion to amend the FAC, Plaintiff's attorney filed a declaration
28 under penalty of perjury stating:

>Plaintiff only learned of CHP's specific role in Mr. Bach's care when NaphCare filed its Third-Party Complaint on August 25, 2025. Prior to that filing, Plaintiff did not know that CHP was the entity providing on-site medical services or that CHP's employee NP Kahl made the critical decisions regarding Mr. Bach's insulin regimen.

(*Mason Decl.* [Doc. 45-2] ¶ 13.) Then, in response to Correctional Healthcare's contention that the Complaint's level of detail indicates Plaintiff must have had the medical records when she filed the lawsuit, Plaintiff's attorney filed a more detailed declaration regarding the information used to file the original Complaint:

>2. The only information available to Plaintiff pre-suit was the Medical Examiner's Report, released in September 2024 just days before the case was filed.
>
>3. Almost immediately after Mr. Bach's death, Plaintiff's counsel at the time, David Demergian, sent requests for records to San Diego County Sherrif's Department requesting medical records, jail records, and any information available regarding Mr. Bach's cause of death.
>
>4. It is believed that due to the nature of the case (a fatal incident in the jail) the Sherrif's Department was unwilling to release any documentation about Mr. Bach or his death while the investigation was pending.
>
>5. As such, despite diligent efforts in requesting both Keith Bach's medical file and inmate file from the Sherrif, no records were turned over pre-suit.
>
>6. The first document Plaintiff received indicating what happened to her husband was the Medical Examiner's report in September of 2024.
>
>7. The Medical Examiner's Report then contained a narrative summary of events and referenced that custodial medical records existed, but did not attach them, did not disclose their contents, and did not identify where any provider worked.
>
>8. The Medical Examiner's Report contains no reference to CHP, to an on-site medical contractor, or to individual medical providers.
>
>9. It was this reason that Plaintiff listed DOE MEDICAL PROVIDERS in the Complaint.

> 10. The factual detail included in the initial complaint came from the Medical Examiner's narrative, not from jail medical records.

(*Mason Reply Decl.* [Doc. 57-1] ¶¶ 2–10.)

Consistent with Plaintiff's counsel's explanation, the allegations in the Complaint and FAC indicate that Plaintiff was unaware of the identity of Correctional Healthcare and NP Kahl until after NaphCare filed the TPC. Neither the Complaint nor the FAC identify the names of the medical providers and instead refers to them as Defendant Does. For example, the Complaint specifically pleads "[o]n information and belief, Defendant NAPHCARE, INC. (hereinafter "Naphcare") was a third-party contractor providing medical services to the San Diego County Sheriff's Department and employed, supervised, and/or trained Defendant Does." (*Compl.* ¶ 15.) Similarly, the Complaint alleges that "all individual defendants and Defendant Does were San Diego Sheriff deputies or medical personnel and agents of Defendant County of San Diego; and/or agents or contractors authorized to work at the San Diego Central Jail." (*Id.* ¶ 16.) The FAC then refers to those "responsible for Decedent's medical care, booking, follow-up assessments, and referrals for further treatment" as "MEDICAL PROVIDER DOES." (*See FAC* [Doc. 9] ¶ 15.) Given these allegations, the Court is persuaded by Plaintiff's counsel's explanation.

Finally, the allegations in the Complaint that Correctional Healthcare cites as support for its argument are consistent with Plaintiff's contention that she was unaware of it and NP Kahl. For example, Correctional Healthcare points to paragraph 31, which alleges:

> On September 26, 2023, at 4:00 a.m., Keith notified the nurse practitioner who performed his initial intake assessment that his insulin pump would be depleted of insulin in approximately 28 hours.

(*Compl.* ¶ 31.) While this allegation is detailed, the reference to the "nurse practitioner" is consistent with Plaintiff's contention she was unaware of his or her identity. Indeed, in

the FAC, Plaintiff amended the allegation to specifically refer to the nurse practitioner as a Medical Provider Doe:

> Based on information and belief, on September 26, 2023, at 4:00 a.m., Keith notified MEDICAL PROVIDER DOE 1, who, based on information and belief, was the nurse practitioner who performed his initial intake assessment at the SDCJ, that his insulin pump would be depleted of insulin in approximately 28 hours.

(*FAC* ¶ 31.) Notably, the proposed SAC now identifies NP Kahl as the potential individual that Mr. Bach notified on September 26, 2023 about his insulin pump:

> Based on information and belief, on September 26, 2023, at 4:00 a.m., Keith notified KAHL and/or MEDICAL PROVIDER DOE 1, who, based on information and belief, was the nurse practitioner who performed his initial intake assessment at the SDCJ, that his insulin pump would be depleted of insulin in approximately 28 hours.

(*SAC* ¶ 34, attached as Ex. A to *Notice of Motion* [Doc. 45].)

For all the foregoing reasons, the Court is persuaded that Plaintiff was unaware of the identities of Correctional Healthcare and NP Kahl until after NaphCare filed the TPC on August 25, 2025. Because Plaintiff moved to amend the FAC on November 14, 2025—less than 3 months later—the Court finds there was no undue delay. This factor supports granting Plaintiff's motion.

### C.     Previous opportunities to amend.

Correctional Healthcare argues that because "Plaintiff has had numerous opportunities to amend her complaint since it was originally filed," the motion should be denied. (*Opp'n* 5:14–6:6.) This argument is premised on the contention that Plaintiff was aware of Correctional Healthcare and NP Kahl's identities before August 2025 and simply chose not to name them as defendants earlier in the litigation. (*Id.* 5:22–26.)

For the reasons set forth in the previous section, the Court finds Correctional Healthcare's contention that Plaintiff was aware of it and NP Kahl's identity before August 2025 lacks merit. Instead, the evidence supports Plaintiff's contention that she

was not aware of their identities until after NaphCare filed the TPC. Accordingly, this factor favors granting Plaintiff's motion.

### D. Futility – statute of limitations.

Correctional Healthcare argues Plaintiff's claims against it and NP Kahl are time barred and thus leave to amend is futile. According to the opposition, the statute of limitations for Plaintiff's negligence-based claims is one year from Mr. Bach's death and expired on September 28, 2024. (*Opp'n* 7:4–8.) The statute of limitations for the section 1983 and Bane Act claims is two years and expired on September 28, 2025. (*Id.* 7:8–9.) Correctional Healthcare further contends Plaintiff's claims do not relate back to the filing of the original Complaint. (*Id.* 7:9–11.) Regarding the relation-back issue, Correctional Healthcare contends Federal Rule of Civil Procedure 15(c)(1) requires that it receive notice of the lawsuit within 120 days of service of process of the Complaint and because Plaintiff did not provide such notice, the claims are time barred. (*Id.* 7:12–8:10.)

Plaintiff responds that the claims are not time barred because the claims against Correctional Healthcare and NP Kahl relate back to the original Complaint. (*Reply* [Doc. 57] 6:2–8:17.) In support of this argument, Plaintiff contends Rule 15(c)(1)'s notice requirement is satisfied because Correctional Healthcare and NP Kahl clearly had notice of the lawsuit. (*Id.* 6:15–8:17.)

The problem with the parties' arguments is that they relate to the incorrect legal standard. While Federal Rule of Civil Procedure 15(c)(1) generally governs the relation-back doctrine in federal court, California law governs in section 1983 lawsuits. *See Merritt v. County of Los Angeles*, 875 F.2d 765, 768 (9th Cir. 1989) ("the relation back provisions of state law, rather than Rule 15(c), govern a federal cause of action pursuant to 42 U.S.C. § 1983.") As explained in *Bu v. Van De Kamp*, 486 F.3d 1128 (9th Cir.2007),

> Section 1983 does not contain its own statute of limitations. Without a federal limitations period, the federal courts "apply the forum state's statute

of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir.2007) (quoting *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir.2004));

*Id.* at 1198.

Under California law, "the general rule is that an amended complaint that adds a new defendant does not relate back to the date of the original complaint and the statute of limitations is applied as of the date the amended complaint is filed." *Woo v. Superior Court*, 75 Cal.App.4th 169, 176 (1999) (citation omitted). An exception exists for substitution under Cal. Code of Civil Procedure § 474 "of a new defendant for a fictitious Doe defendant named in the original complaint as to whom a cause of action was stated in the original complaint." *Id*. (citation omitted). "When the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly. . . ." *Reynolds v. Verbeck*, 2006 WL 3716589, *2 (N.D.Cal. 2006) (quoting Cal. C.C.P. § 474 (2006)). If section 474's requirements are satisfied, the amended complaint is deemed filed as of the date the original complaint was filed. *Woo*, 75 Cal.App.4th at 176 (citation omitted).

As set forth above, both the Complaint and the FAC (which was also filed before the statute of limitations expired) identified the unknown medical provider defendants as Does. And the motion to amend and proposed SAC demonstrate Plaintiff seeks to add Correctional Healthcare and NP Kahl as Doe Defendants. (*See Mason Decl*. ¶ 12; compare *FAC* ¶ 31 to *SAC* ¶ 34.) For this reason, Correctional Healthcare's argument that leave to amend would be futile lacks merit and this factor supports leave to amend.

### E. Prejudice.

Correctional Healthcare's opposition does not argue prejudice. (*See Opp'n*.) Additionally, the Court agrees with Plaintiff's contention that adding Correctional

10

Healthcare will not cause prejudice because the claims against it and NP Kahl arise from the same facts, events and medical care already at issue in the litigation. Moreover, Correctional Healthcare has already been added to the litigation by NaphCare. Finally, given the allegations in this case—that Mr. Bach died not long after NP Kahl allegedly "abruptly discontinued [his] insulin pump therapy and prescribed a grossly inadequate fixed-dose regimen" (*SAC* ¶ 36)—it is reasonable to infer that Correctional Healthcare and NP Kahl were aware of this lawsuit soon after it was filed. For these reasons, the Court finds this factor favors granting leave to amend.

## IV.    CONCLUSION & ORDER

For the reasons stated above, the Court **GRANTS** Plaintiff's motion to amend [Doc. 45] and **ORDERS** the SAC, which must comply with Cal. Code of Civil Procedure § 474, filed on or before **February 4, 2026**.

**IT IS SO ORDERED.**

Dated:  January 21, 2026

_____
Hon. Thomas J. Whelan
United States District Judge